# EXHIBIT 3

T. Paulette Sutton, M.S., M.T. (A.S.C.P.), CLS
6025 Stage Road
Suite 42-253
Memphis, TN  38134

901-569-3034                                                                                                    psutton6025@comcast.net

---

**AFFIDAVIT OF T. PAULETTE SUTTON**
**ADDENDUM TO MY AFFIDAVIT OF JANUARY 31, 2022**
**AND TO MY ADDENDUM AFFIDAVIT DATED FEBRUARY 12, 2022**

T. Paulette Sutton, having been duly sworn, states that the following is accurate and true:

**Consultation Question**

1. On July 03, 2020, I was contacted by Richard Burr and Joshua Freiman, counsel for Michael Dean Gonzales, to review available documentation regarding Mr. Gonzales' case: *Gonzales v. Lumpkin*, No. 7:12-CV-00126-DAE (W.D. Tex.). I was retained as an expert on the subject of forensic serology and bloodstain pattern analysis. Based on the documentation provided in July of 2020, I prepared my original affidavit on January 31, 2022.

2. On February 09, 2022, I was asked to review additional information that had been revealed regarding Mr. Gonzales' case. Specifically, this information consisted of the affidavits of Eduardo Saenz Nino and of Investigator Richard Reyna regarding conversations with Jesse Perkins. Any time added information becomes available, previous findings may require revision, and that is the situation in this instance. After review of the initial documentation provided coupled with this latest information, I issued an addendum to my original affidavit on February 12, 2022. At this time, there were no photographs available of the multi-colored flannel shirt (Item 121) or the gray pants (Item 89) which was recovered from the residence at 517 South Sam Houston. The only information regarding stain location on the multi-colored flannel shirt (Item 121) and gray pants (Item 89) was limited to sketches prepared by the Texas Department of Public Safety (DPS) laboratory at the time of analysis. Photographs of evidence that was made at the time of the crime scene examination were limited to restrictions presented at the crime scene, and there were insufficient viewpoints for thorough analysis.

3. On February 17, 2022, photographs of assorted items of physical evidence were taken at the Odessa Police Department and submitted. On February 23, 2022, these photographs were supplemented with images of the interior surface of the multi-colored flannel shirt (Item 121) using an alternate light source (ALS) to assist in the identification of stains on the black interior surface of the flannel shirt. Examination of these photographs combined with information gleaned from previous submittals provided additional information and precipitated the preparation of a third affidavit, namely this addendum.

4. As stated previously, when added information becomes available it is necessary to reevaluate previous findings in light of this latest information. This evaluation must consider whether or

**Affidavit of Paulette Sutton**
*Gonzales v. Lumpkin*

not this latest information necessitates the revision or supplementation of earlier reports. In this case, additional reports in the form of addendums to earlier affidavits is warranted.

## Case Materials Reviewed

In addition to the multiple case documents enumerated in Appendix B of my January 31, 2022, affidavit, I reviewed the following:
On February 10, 2022, I received the following items via email from Attorney Richard Burr:
1. Affidavit of Eduardo Saenz Nino dated February 02, 2022.
2. Affidavit of Private Investigator Richard Reyna dated February 07, 2022.

On February 17, 2022, I received twenty-six images via Drop Box of:
1. Item 121- Flannel shirt recovered from 517 South Sam Houston

On February 19, 2022, I received 263 images via Drop Box. Among these images were photographs of the following items of evidence:
1. Item 13 – Board from the kitchen to living room threshold
2. Item 18 – Blue house slipper from kitchen
3. Item 19 – A piece of time from kitchen
4. Item 23 – Three pieces of board from the utility room
5. Item 40 – Plaster casts of footprint from front of residence at 220 Schell
6. Item 41 – Plaster cast of footprint from backyard of 220 Schell
7. Item 42 – Wall section from kitchen with handprint
8. Item 47 – Armchair cover from living room
9. Item 49 – Gray trousers with a belt from Manuel Aguirre
10. Item 50 – White t-shirt from Manuel Aguirre
11. Item 62 – Housecoat from Merced Aguirre
12. Item 63 – Sleeping gown from Merced Aguirre
13. Item 75 – Latent shoe print (powder) from utility room
14. Item 76 – Latent shoe impression with blood stain from utility room
15. Item 89 – Gray pants recovered from 517 South Sam Houston
16. Item 121 – Multi-colored flannel shirt seized from 517 South Sam Houston
17. Items 14, 31, and 83—chili peppers

On February 23, 2023, I received thirty-seven images via drop Box which reflected:
1. Alternate light source (ALS) examination of Item 121 – Multi-colored flannel shirt interior surfaces

**Affidavit of Paulette Sutton**
*Gonzales v. Lumpkin*

### Summary of Additional Information

5. Photographs of the interior and the exterior of the multi-colored flannel shirt (Item 121); photographs of the gray pants recovered from 517 South Sam Houston (Item 89) plus photographs of Mrs. Aguirre's sleeping gown (Item 63) and her housecoat (Item 62) were significant in confirming my earlier conclusions in this matter.

6. Examination of the interior surface of the multi-colored flannel shirt (Item 121) using the alternate light source (ALS) is of assistance in locating stains of possible biological origin. The ALS is another presumptive tool in that it assists in locating stains that warrant further testing, but it does not identify the makeup of the stain or the individual of origin.

7. In the affidavit of Eduardo Saenz Nino dated February 02, 2022, he describes being told by Jesse Perkins that Perkins, Daniel Lugo, and Julian Olivarez murdered Mr. and Mrs. Aguirre. Nino stated that he noticed Jesse Perkins had a cloth wrapped around the palm of his left hand up to his wrist, and Perkins explained that he got cut inside the Aguirre's house and got blood on his shirt. According to Nino, Perkins stated that because he had blood on his shirt, that Michael Gonzales gave him the multi-colored flannel shirt (Item 121) to wear. He said Perkins was wearing this multi-colored flannel shirt at the time of Nino's visit.[1]

8. In Investigator Reyna's affidavit, he describes a discussion with Jesse Perkins on October 12-13, 2021 where Perkins stated that if blood was found at the Aguirre's crime scene that did not match the DNA of the Aguirres or the DNA of Michael Gonzales as "That blood is probably mine".[2] This statement indicates that Perkins acknowledged Nino's assertion that he was in the Aguirre residence, that he was injured, and that he was bleeding while inside the Aguirre residence.

### Terms and Definitions in Bloodstain Pattern Analysis

9. In this document, stains or stain patterns that are visually consistent with blood will be referred to as "blood" or "bloodstains." All referenced definitions are taken from American Academy of Forensic Sciences (AAFS) Standards Board, ASB Technical Report 033, First Edition 2017, Terms and Definitions in Bloodstain Pattern Analysis, available https://www.aafs.org/sites/default/files/media/documents/033_TR_e1_2017.pdf.

---

[1] Affidavit of Eduardo Saenz Nino dated February 02, 2022.
[2] Affidavit of Private Investigator Richard Reyna dated February 07, 2022.

**Affidavit of Paulette Sutton**
*Gonzales v. Lumpkin*

### Scope of Review

10. The scope of this document will be limited to a review and evaluation of the documents identified in Appendix A of my January 31, 2022 affidavit; the information reported in the affidavits identified above; and the examination of the photographs of the actual evidence taken on February 17, 2022 and February 23, 2022 using ALS.

### Observations

11. The multi-colored flannel shirt described in Mr. Nino's affidavit is identified as Evidence Item #121 which was recovered from 517 South Sam Houston.[3]

12. Evidence from the Aguirre case was initially submitted to the DPS Laboratory on May 20, 1994.[4] This testing was limited to ABO typing and PGM subtyping, and the results were reported on January 13, 1995.[5] This initial laboratory examination will be referenced as the "1994 Laboratory Examination".

13. During the 1994 examination of the evidence at DPS Laboratory, a sketch of the multi-colored flannel shirt (Item #121) was prepared to indicate stain location. This sketch indicated two (2) areas of staining namely on the left front panel and on the right front panel of the shirt. On this sketch were notations of "PHT +." This abbreviation typically refers to the results obtained with presumptive testing for blood using phenolphthalein reagent. A positive phenolphthalein reaction would indicate that blood may be present, but additional testing would be necessary to confirm the body fluid and to provide information regarding the identity of the person leaving this body fluid.

14. Testing conducted on the flannel shirt (Item 121) in 1994 was limited to ABO typing and PGM subtyping. The stains from the flannel shirt were confirmed to be composed of human blood, but results of ABO typing and PGM subtyping were inconclusive.[6]

---

[3] Texas Department of Public Safety Crime Laboratory Physical Evidence Submission Form, 05/20/1994 (DPS Lab document 011).

[4] Texas Department of Public Safety Crime Laboratory Physical Evidence Submission Form, 05/20/1994 (DPS Lab document 011).

[5] Texas Department of Public Safety Laboratory DNA Report L-232609, Signed by Gustavo De Leon and Irma Rios, dated January 13, 1995 (DPS Lab document 078).

[6] Texas Department of Public Safety Laboratory DNA Report L-232609, Signed by Gustavo De Leon and Irma Rios, dated January 13, 1995 (DPS Lab document 078).

**Affidavit of Paulette Sutton**
*Gonzales v. Lumpkin*

15. Evidence from the Aguirre case was submitted to the DPS Laboratory a second time on September 26, 2000. Testing at this time included DNA testing, and the results were reported on October 17, 2003.[7] This laboratory examination will be referenced as the "2000 Laboratory Examination".

16. When the flannel shirt (Item 121) was reexamined in 2000, a new sketch of the shirt was prepared. This sketch indicated stains on the right cuff (stain #1); on the right front panel of the shirt (stain #2) and on the left cuff (stain #3)[9]. This sketch also noted that "TMB Pos" at stains 1A, 1B, 2 and 3. TMB testing is associated with testing done in 2000 and is an abbreviation for a presumptive test named tetramethyl benzidine (TMB).

17. Neither of the stains noted on the right and left cuffs of the flannel shirt (Item 121) during the second examination in 2000 were referenced at all on notes or reports associated with the 1994 examination. It would appear that the stains on the cuffs of the shirt were not noticed at all during the first examination of the evidence.

18. The stain previously indicated on the left front panel of the shirt in the 1994 sketch was not indicated in the sketch prepared during the 2000 examination. The reason this stain is not indicated in the 2000 sketch was originally unknown. Upon examination of the photographs taken on February 17, 2022 it was apparent that the entirety of the stain had been consumed during the 1994 analysis and, therefore, not visible to the analyst in 2000.

19. In 2000, the flannel shirt (Item 121) was tested using DNA analysis. Stains 1A and 1B (right cuff); stain 2 (right front panel); and stain 3 (left cuff) revealed a DNA profile consistent with Mrs. Aguirre.[10]

20. DNA from Mr. Aguirre was noted on the DNA report regarding the flannel shirt (Item 121) from the 2000 examination, but the specific location of Mr. Aguirre's DNA on the shirt was not indicated.[11]

21. The area surrounding the locations of cuttings labeled as stains 1A and 1B (right cuff) are visible in photographs taken on February 17, 2022. The stained area which remains around the

---

[7] Texas Department of Public Safety Laboratory DNA Report L-232609, signed by Irma Rios, dated October 17, 2003 (DPS Lab document 029).

[9] Texas Department of Public Safety Laboratory Information Sheet, Case #232609, Exhibit 121, dated 10-02-00 (DPS Lab document 056).

[10] Texas Department of Public Safety Laboratory DNA Report L-232609, signed by Irma Rios, dated October 17, 2003 (DPS Lab document 029).

[11] Texas Department of Public Safety Laboratory DNA Report L-232609, signed by Irma Rios, dated October 17, 2003 (DPS Lab document 029).

**Affidavit of Paulette Sutton**
*Gonzales v. Lumpkin*

location of the earlier cuttings demonstrates a stain that is light brown and diffuse in appearance. The stain characteristics closest to the edge of the cuff are consistent with being created by a saturation[13] mechanism. Across the top of the cuff, the stain exhibits characteristics of a transfer stain[14].

22. On the right front panel of the flannel shirt is one area labeled "TMB + #2" in the photographs taken on February 17, 2022. TMB is associated with testing done in 2000 and is an abbreviation for a presumptive test named tetramethyl benzidine (TMB). Testing from this region revealed a DNA profile consistent with Mrs. Aguirre[15]. No stain remains after testing so no determination regarding mechanism of deposition can be made.

23. On the lower portion of the right front panel of the flannel shirt (Item 121) is an area labeled "PHT +" that has two (2) cuttings removed. PHT is associated with testing done in 1994. No testing from this area was reported from the 2000 testing, and there was no staining visible within the cut regions in the photographs made on February 17, 2022. Due to the lack of remaining stain, no determination regarding mechanism of deposition can be made.

24. Adjacent to the area marked "PHT +" on the left front panel of the flannel shirt (Item 121) there is a second area labeled "Control" which would be consistent with a control cutting commonly done during this era. Testing of the stain within the "PHT +" area was inconclusive for ABO and PGM subtyping.[16] No staining appears to remain within the cut regions, and no testing appears to have been conducted from this stain during the second examination in 2000. Due to the lack of remaining stain, no determination regarding mechanism of deposition can be made.

25. On the cuff of the left sleeve is an area marked which corresponds to the location of the stain designated as #3 in the sketch prepared during the 2000 analysis. Testing of this region revealed a DNA profile consistent with Mrs. Aguirre.[17] No images were submitted among images made

---

[13] **Saturation stain**  A bloodstain resulting from the accumulation of liquid blood in an absorbent material.

[14] **Transfer stain**  A bloodstain resulting from contact between a blood-bearing surface and another surface.

[15] Texas Department of Public Safety Laboratory DNA Report L-232609, signed by Irma Rios, dated October 17, 2003 (DPS Lab document 029).

[16] Texas Department of Public Safety Laboratory DNA Report L-232609, Signed by Gustavo De Leon and Irma Rios, dated January 13, 1995 (DPS Lab document 078).

[17] Texas Department of Public Safety Laboratory DNA Report L-232609, signed by Irma Rios, dated October 17, 2003 (DPS Lab document 029).

**Affidavit of Paulette Sutton**
*Gonzales v. Lumpkin*

on February 17, 2022 that depicted this region in sufficient detail to determine the mechanism of deposition.

26. An unknown region of the flannel shirt (Item 121) recovered from 517 South Sam Houston was analyzed for DNA and revealed a DNA profile consistent with Mr. Aguirre[18]. The specific location of Mr. Aguirre's DNA on the flannel shirt could not be ascertained by available documentation. Without identifying the specific area and photographing that area, the mechanism of deposition cannot be determined.

27. Photographs taken of the interior of the flannel shirt (Item 121) on February 17, 2022 showed an interior lining composed of a black synthetic quilted material. An area of brownish staining along the interior surface of the left sleeve and at the lower portion of the right sleeve were visible. There are no markings on the interior of the shirt which have been associated with prior analytical endeavors and no notations regarding the interior of the flannel shirt in the laboratory notes submitted. It appears that no laboratory analysis has been performed on these stained areas on the interior of the flannel shirt.

28. Analysis of bloodstains from a pair of gray pants (Item 89) from 517 South Sam Houston identified the blood as coming from Jesse Perkins[19]. Photographs of the pants taken on February 17, 2022 showed the tested areas (cuttings) were located on the outer aspects of each leg of the slacks. An insufficient amount of stained material remains to determine mechanism of deposition, but the finding of Jesse Perkins' DNA on the slacks is consistent with Nino's claim of Perkins being injured and bleeding.

29. Sgt. Rick Pippins described two instances of passive bloodstains within the crime scene that he felt were attributable to an injured perpetrator. One instance is on Mrs. Aguirre's "blouse," and the second area is on the floor of the laundry room.[20]

30. On the laundry room floor, Sgt. Pippins described "circular bloodstains appear, approximately 8mm-12mm in diameter." Sgt. Pippins continues by stating "This is indicative of a blood source creating drops falling several feet down to the surface such as a standing man."[21]

31. In regard to the stains on Mrs. Aguirre's "blouse," Sgt. Pippins describes "dropped bloodstain on the lower front portion of Mrs. Aguirre's blouse." He goes on to state: "It is possible then

---

[18] Texas Department of Public Safety Laboratory DNA Report L-232609, signed by Irma Rios, dated October 17, 2003 (DPS Lab document 029).

[19] Texas Department of Public Safety Laboratory DNA Report L-232609, signed by Irma Rios, dated October 17, 2003 (DPS Lab document 029).

[20] Bloodstain Pattern Analysis Report, dated December 08, 1994, Sgt. Rich Pippins, p. 17.

[21] Bloodstain Pattern Analysis Report, dated December 08, 1994, Sgt. Rich Pippins, p. 17.

that the attacker dropped the blood from his person while standing or kneeling over Mrs. Aguirre."[22]

### Conclusions

32. Bloodstains from Mr. and Mrs. Aguirre were identified by DNA testing conducted on the exterior surface of the flannel shirt (Item 121) recovered from 517 South Sam Houston. This finding supports that the flannel shirt came into contact with a liquid source of blood from Mr. and Mrs. Aguirre.

33. The small amount of bloodstaining and the distribution of the bloodstains on the exterior surface of cuffs and front of the flannel shirt is indicative of the shirt being worn during incidental contact with exposed blood belonging to Mr. and Mrs. Aguirre and not during a violent attack. This opinion has been reinforced by the photographs of the flannel shirt (Item 121) taken February 17, 2022 showing the stains on the right cuff were created by a saturation mechanism (accumulation of blood in an absorbent material) and by a transfer mechanism (the result of the cuff coming into contact with a blood-bearing surface).

34. There is no indication that the interior of the flannel shirt was ever examined by the DPS laboratory for the presence of biological stains. During laboratory processing of clothing, it is imperative that both the interior and the exterior of clothing be examined for stains and biological material.

35. After examining the evidence photographs taken on February 17, 2022, it was noted that there are areas of brownish staining on the interior of the left sleeve and near the interior of the right cuff of the flannel shirt (Item 121). In my experience in the laboratory, I have found that bloodstains deposited on black synthetic material, such as the quilted interior of the flannel shirt, often present as a brownish stain.

36. In addition to the coloration of these stains on the interior surface of the flannel shirt (Item 121) being consistent with blood, the location of these stains is consistent with their being deposited by a person with an injured arm and/or hand wearing the shirt. In his affidavit dated February 02, 2022, Eduardo Saenz Nino described this identical scenario fifteen (15) days prior to the interior of the shirt being examined and these stains being discovered (February 17, 2022). Alternate light source (ALS) examination of the interior of the flannel shirt enhanced these stains and identified additional possible biological stains as well. In order to determine the true identity and origin of the stains on the interior of the flannel shirt, DNA analysis is the only option.

---

[22] Sgt. Rick Pippins' report, p. 14, item 6.

Page **9** of **10**

**Affidavit of Paulette Sutton**
*Gonzales v. Lumpkin*

37. Jesse Perkins' blood and DNA were found on the exterior lower leg of the gray slacks (Item 89) recovered from 517 South Sam Houston. Blood dripping from an injured arm/hand as described by Nino in his affidavit dated February 02, 2022 is certainly consistent with the location of the stains found on the outer legs of the pants.

38. When I prepared my affidavit of January 31, 2022, I stated that it is vitally important that there be DNA testing of the two areas of bloodstains that Sgt. Rick Pippins described as stains possibly left by a bleeding perpetrator, namely on Mrs. Aguirre's clothing and on the floor of the laundry room. Since that time, I have learned via the statements of Mr. Nino and of Mr. Perkins that there is evidence that Jesse Perkins was bleeding in the Aguirre home. These new statements, coupled with the observations of Sgt. Rick Pippins during his examination of the crime scene in 1994, make additional DNA testing even more imperative.

39. Texas Ranger Joe Sanders also noted in his report that the drops in the laundry room "gave appearance actor was looking for something to clean his hands and arms on"[24] Contrary to widely held belief, multiple drops of blood rarely originate from a perpetrator who has become bloodied during the assault or from a bloody weapon. Due to the effects of surface tension, multiple drops indicate that the source is, instead, an actively bleeding individual[25]. If samples of the stains from the laundry room floor can be located, it would be imperative that they be tested for DNA. It is difficult to imagine that both Sgt. Pippins and Texas Ranger Sanders recognized that these stains were so important when they were at the scene, and yet samples were not collected. The description of these stains is consistent with a bleeding perpetrator dripping blood onto the laundry room floor. A diligent search for such important samples is warranted.

40. The second location Sgt. Pippins noted seeing drops of blood consistent with originating from a bleeding perpetrator was on Mrs. Aguirre's "blouse." Examination of photographs of Mrs. Aguirre's housecoat (Item 62) taken on February 17, 2022 revealed that drops such as those described by Sgt. Pippins when he examined the crime scene in 1994 remain on her housecoat. Having been able to examine the photographs of the evidence taken on February 17, 2022, I agree with Sgt. Pippins' assessment that the appearance of these bloodstains is consistent with their being dripped from her attacker onto Mrs. Aguirre's clothing. Current knowledge within the field of bloodstain pattern analysis has revealed that such drops indicate a bleeding individual/perpetrator and are not caused by a bloodied object.

---

[24] Texas Department of Public Safety Offense Report, Texas Ranger Joe Sanders, p. 5 (Document DPS Lab 025)

[25] James, Kish & Sutton, *Principles of Bloodstain Analysis* (1st ed. 2005 CRC Press), p. 80.

**Affidavit of Paulette Sutton**
*Gonzales v. Lumpkin*

41. There is now new evidence from Jesse Perkins himself that he was inside the Aguirre home when they were attacked; that he was bleeding; and that he believed that he left traces of blood inside the Aguirre's house. This evidence indicates that Perkins may well be the person who left the bloodstains in the laundry room and on Mrs. Aguirre's housecoat as described by Sgt. Pippins and by Texas Ranger Sanders. DNA testing could answer this question.

42. The information relayed by Eduardo Saenz Nino in his affidavit dated February 02, 2022 must be that of a clairvoyant in order to relay a version that fits exactly with the findings when the physical evidence was examined on February 17, 2022, fifteen days after Nino gave his statement. At that time, no one knew what would be found when the flannel shirt (Item 121) and the gray pants (Item 89) recovered from 517 South Sam Houston were examined. Yet Nino's statement was completely congruent with what was found. First, that the pattern of staining on the exterior of the flannel shirt shows that it was not being worn during the assault, but it was in passive contact with liquid blood from both Mr. and Mrs. Aguirre. When the interior of the shirt was examined, apparently for the first time ever, there are stains that are consistent with blood on the interior of the sleeve in the same location that Nino says Jesse Perkins was injured. When the pattern of bloodstaining on the gray pants (Item 89) was revealed in the February 17, 2022 photographs, Perkins' blood was identified along the exterior of the legs of the pants. This finding confirms that Perkins was indeed bleeding, and the location of the stains is indicative of blood dripping from an injury. These findings must also be considered in light of Sgt. Rick Pippins' and Texas Ranger Joe Sanders' opinion that someone was dripping blood inside the Aguirre residence. Their opinion was formulated in 1994 and foretold what Nino would claim in 2022 and what Perkins himself would tell Investigator Richard Reyna in October of 2021. There is simply no way Nino could have knowledge of what the evidence would later reveal. Evidence from a crime is collected, preserved, and analyzed for the simple reason that the evidence never lies.

These findings are based upon the materials provided to date. Submission of additional materials could alter these conclusions.

I, T. Paulette Sutton, swear that the foregoing is true and correct

*/s/ T. Paulette Sutton/*

T. Paulette Sutton

Sworn and subscribed before me this 25th day of February, 2022.

*/s/ Kent Lantrip/*
Notary Public, State of Tennessee

[Notary Seal: KENT LANTRIP, STATE OF TENNESSEE, NOTARY PUBLIC, COUNTY OF SHELBY]

My Commission Expires
May 18, 2025