IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND-ODESSA DIVISION

| | | |
|---|---|---|
| MICHAEL DEAN GONZALES, | § § § | CASE NO. 7:22-CV-46 |
| *Plaintiff,* | § § | |
| v. | § § | **DEATH PENALTY CASE** |
| WOODSON ERICH DRYDEN, Ector County District Attorney Pro Tem; | § § § | |
| MICHAEL GERKE, Chief, Odessa Police Department; | § § § | **EXECUTION DATE: MARCH 8, 2022** |
| STEVEN MCCRAW, Director, Texas Department of Public Safety; | § § § § | |
| *Defendants.* | § | |

**\*\*Execution Date Set for March 8, 2022\*\***

<u>**MOTION FOR A STAY OF EXECUTION PENDING RESOLUTION OF
42 U.S.C. § 1983 COMPLAINT**</u>

Plaintiff Michael Dean Gonzales is scheduled to be executed on March 8, 2022. On March 1, 2022, he filed a complaint under 42 U.S.C. § 1983, seeking relief for violation of his constitutional rights under color of state law. *See Gonzales v. Dryden, et al.*, No. 7:22-CV-46, ECF No. 1. He requests a stay so this Court can fully consider and adjudicate his claims. *See Harris v. Johnson*, 323 F. Supp.2d 797, 804 (S.D. Tex. 2004) (granting stay pending resolution of § 1983 claims). Gonzales is likely to succeed on these claims. The defendants, acting in their official capacities and under color of state law, denied him access to DNA testing of critical evidence in their possession—evidence that will enable him to prove he was wrongfully convicted for capital murder.

1

**GONZALES IS ENTITLED TO A STAY OF EXECUTION.**

The standards for a stay of execution are well-established. Relevant considerations for granting a stay include the prisoner's likelihood of success on the merits, the relative harm to the parties, the public interest, and the extent to which the prisoner has unnecessarily delayed their claims. *See Hill v. McDonough*, 547 U.S. 573, 584 (2006); *Nelson v. Campbell*, 541 U.S. 637, 649-650 (2004); *Nken v. Holder*, 556 U.S. 418, 434 (2009) (setting out four-part test). Gonzales prevails under these factors.

Gonzales's § 1983 complaint sets forth three meritorious grounds for concluding that he has a constitutional right to test biological material that will likely prove he is actually innocent of the murder for which he was convicted:

1.    Gonzales has been denied access to extant biological material that, when tested, will likely exclude his DNA profile from evidence present at the scene of the crime, establish the presence of one or more guilty individuals, and, coupled with other evidence of his innocence, exonerate Gonzales. Because Texas has created a statutory procedure for accessing and testing biological material, *see* Tex. Code Crim. Proc. art. 64.03 (2017), it may not rely on a fundamentally unfair process to deny that access and testing. But article 64.03(a)(2) sets a fundamentally unfair bar for testing biological material by requiring movants to show, by a preponderance of the evidence that they would not have been convicted if exculpatory results had been obtained by DNA testing. Forty-four states and the federal government require testing to be performed based on a showing that is more movant-friendly than the Texas.

Moreover, the Texas Court of Criminal Appeals, interpreting article 64.03(a)(2), makes the bar even higher. Although the statute places no express limit on the use of non-DNA post-trial evidence to satisfy the preponderance standard, the CCA has held that the convicting court must focus its inquiry solely on the effect of "exculpatory results" from DNA testing, without

consideration of other "post-trial factual developments." *See Hall v. State*, 569 S.W.3d 646, 656 (Tex. Crim. App. 2019). In Gonzales's case, that means that the court cannot account for a variety of newly discovered evidence, including admissions by Jesse Perkins—an early suspect in the case—that he was at the Aguirres' home during the murder and likely left drops of his own blood there, Affidavit of Richard Reyna (Exhibit 1), because he got cut stabbing and killing Mrs. Aguirre, Affidavit of Eduardo Nino (Exhibit 3) and the fingerprints cards recently discovered by the Odessa Police Department. Affidavit of Stephanie Bothwell (Exhibit 2). Combined, the statute and the CCA's interpretation of it have deprived Gonzales of his right to due process.

      2.      Gonzales has been denied his fundamental right of access to the courts—a right rooted in the First and Fourteenth Amendments. State law must ensure that prisoners like Gonzales have meaningful access to post-conviction remedies to vindicate this right. *Cf. Bounds v. Smith*, 430 U.S. 817, 828 (1977) (holding that prison authorities are required to provide inmates with meaningful legal assistance or resources to effectuate their constitutional right of access to courts). Texas' restrictive procedure for obtaining access to DNA testing under Article 64, and the CCA's more restrictive interpretation of the procedure, as described above, are not adequate, meaningful, or effective. Without access to biological material and testing, Gonzales cannot exercise his rights under Texas Code Crim. Proc. art. 11.071, § 5(a)(2), art. 11.073, or the U.S. Constitution to seek relief from his wrongful conviction.

      3.      Under the Eighth Amendment's Cruel and Unusual Punishment Clause, Gonzales cannot be executed when he has viable claims of innocence, without first affording him the opportunity to prove his innocence. On its face and as construed by the CCA, Chapter 64 bars DNA testing when the evidence could change the outcome at capital sentencing, even if it did not change the outcome at trial. Because Texas law does not allow for DNA testing under such

circumstances, Article 64 violates the Eighth Amendment prohibition on cruel and unusual punishment.

### 1. Mr. Gonzales has made a strong showing he is likely to succeed on the merits of his § 1983 claims.

Gonzales's claims could not be more fundamental. The evidence he seeks to have tested includes a blood-stained flannel shirt that the State alleged Gonzales wore during the murder. New evidence—including statements made by an alternate suspect, Jesse Perkins—indicates that Gonzales was not wearing that shirt in the Aguirre home. Instead, he had given it to Perkins *after* the murders, and Perkins—bleeding from wounds he likely incurred while stabbing the Aguirres—got his blood on the inside of the shirt. *See* Affidavit of Eduardo Saenz Nino ¶ 6 (Exhibit 3) (Perkins received cut inside Aguirre home and had a bandage on his left wrist and arm). The presence of Perkins's blood, and that of both victims, will be conclusive proof that Perkins is the actual perpetrator. In other words, the evidence may prevent an innocent man's execution.

It is critical to understand that the post-trial evidence of Perkins' guilt and Gonzales' innocence—including Perkins' confession to Nino about the killing and getting cut in the course of it, his admission to Reyna that he bled in the Aguirres' house, and bloodstain pattern expert Sutton's expert findings—are necessary to appraise the likelihood that DNA testing would lead to a different outcome at trial. Yet, under Texas' DNA testing procedure, this evidence cannot be considered in making that assessment. Under these circumstances there is a reasonable likelihood of success on the merits

### 2. Mr. Gonzales will be irreparably injured absent this Court's stay of his execution.

For the same reason, the balance of harms weighs in Gonzales's favor. The harm to Gonzales of being put to death without having been permitted to bring legitimate and bona fide

4

evidence of innocence—evidence he has diligently sought and yet been deprived of—to the attention of the state courts is unmistakable. Any harm to the State in staying the execution pending resolution of the suit cannot outweigh the Gonzales's interest in asserting his innocence and the public imperative to ensure that a condemned inmate not be put to death when he is innocent. *See Wood v. Collier*, 836 F.3d 534, 542 (5th Cir. 2016) ("The finality of a death sentence and, with it, the inherent risk of uncertainty demand diligent effort by all.").

### 3. Mr. Gonzales has not unduly delayed asserting his right to relief under 42 U.S.C. § 1983

Finally, Gonzales has not unreasonably delayed the assertion of his rights. No DNA testing was conducted until five years *after* Gonzales was convicted—and that testing excluded him from every interpretable piece of evidence.[1] The outside of the flannel shirt was tested; it had the DNA of the victims on it. But the inside, where stains from Perkins's arms were likely left, was not tested. *See* February 25, 2022, Affidavit of Paulette Sutton, (Exhibit 4), ¶¶ 11-26. In 2020, Gonzales asked that additional testing be conducted on the shirt and fingernail scrapings taken from the victims. The state court denied the request, and Gonzales's appeal from that denial remains pending in the CCA.

Since the 2020 request, Perkins has confirmed that he was in the Aguirre home, was cut while stabbing Mrs. Aguirre, and bled there. New evidence has also indicated that two other men were involved in the crime—men who may have deposited DNA at the scene. In addition— critically—new inspection of the flannel shirt has revealed stains consistent with blood on the inside of the left sleeve, where wounds from the killer likely bled. February 25, 2022, Affidavit of Paulette Sutton, ¶ 26 (Exhibit 4). Despite Gonzales's repeated requests to the District Attorney

---

[1] The testing was conducted in 2000, but the results were not provided to Gonzales until 2008. October 17, 2003 DPS Laboratory Report at 2 (Exhibit 6).

Pro Tem and the Odessa PD for all forensic and biological evidence, the State did not provide images of the bloodstained flannel shirt to Mr. Gonzales until February 14, 2022—less than three weeks before his execution.

Gonzales has diligently pursued these leads to prove his innocence as they developed. Indeed, nearly 30 years ago, Gonzales voluntarily submitted to the application of Luminol on his hands and arms to demonstrate that he did not stab the Aguirres. That application—like every test of biological material since—exculpated Gonzales. Under the circumstances, Gonzales was reasonably diligent in bringing his initial complaint under 42 U.S.C. § 1983.

ACCORDINGLY, the Court must stay the execution of Michael Gonzales pending the resolution of his complaint.

Respectfully submitted,

*/s/ Richard Burr*

Richard Burr
Texas Bar No. 24001005
Burr and Welch, PC
PO Box 525
Leggett, TX 77350
713-628-3391
dick@burrandwelch.com

Counsel for Michael Dean Gonzales

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing will be served on Defendant Woodson Erich Dryden via an email sent to Erich.dryden@oag.texas.gov, on Michael Gerke via email at mgerke@odessa-tx.gov and Director Steven McCraw upon appearance.

/s/ Richard Burr
Richard Burr

Counsel for Mr. Gonzales