EXHIBIT 5

T. Paulette Sutton, M.S., M.T. (A.S.C.P.), CLS
6025 Stage Road
Suite 42-253
Memphis, TN 38134

901-569-3034                                                                                    psutton6025@comcast.net

---

# AFFIDAVIT OF T. PAULETTE SUTTON
# ADDENDUM TO MY AFFIDAVIT OF JANUARY 31, 2022

T. Paulette Sutton, having been duly sworn, states that the following is accurate and true:

## Consultation Question

1. On February 09, 2022, I was contacted by Richard Burr and Joshua Freiman, counsel for Michael Dean Gonzales, regarding additional information that had been revealed regarding Mr. Gonzales's case, *Gonzales v. Lumpkin*, No. 7:12-CV-00126-DAE (W.D. Tex.). I had previously been retained as an expert on the subject of forensic serology and bloodstain pattern analysis and was asked to review the new information that had been revealed along with the previous case materials in order to evaluate the forensic biology and bloodstain pattern evidence.

## Case Materials Reviewed

2. In addition to the multiple case documents enumerated in Appendix B of my January 31, 2022 affidavit, on February 10, 2022, I received the following items via email from Attorney Richard Burr:

   a. Affidavit of Eduardo Saenz Nino dated February 02, 2022.

   b. Affidavit of Private Investigator Richard Reyna dated February 07, 2022.

## Summary of Additional Information

3. In Mr. Nino's affidavit, he describes an account by Jesse Perkins indicating that Perkins, Daniel Lugo, and Julian Olivarez murdered Mr. and Mrs. Aguirre. Nino stated that he noticed Jesse Perkins had a cloth wrapped around the palm of his left hand up to his wrist, and Perkins explained that he got cut inside the Aguirre's house and got blood on his shirt. Perkins further told Nino that Michael Gonzales gave him the flannel shirt that he (Perkins) was wearing at the time of Nino's visit[1].

---

[1] Affidavit of Eduardo Saenz Nino dated February 02, 2022.

**Affidavit of Paulette Sutton**
*Gonzales v. Lumpkin*

10. The stain previously indicated on the left front panel of the shirt in the 1994 sketch was not indicated in the sketch prepared during the 2000 examination. The reason this stain is not indicated in the 2000 sketch is unknown, but it is possible that the stain was consumed during the 1994 analysis and, therefore, not visible to the analyst in 2000.

11. Stains 1A, 1B (right cuff); stain 2 (right front panel); and stain 3 (left cuff) from item 121 (the flannel shirt) revealed a DNA profile consistent with Mrs. Aguirre. Another stain, not specified as to location, on item 121 (the flannel shirt) revealed a DNA profile consistent with Mr. Aguirre[6].

12. No photographs of the bloodstains[7] on item 121 (the flannel shirt) were submitted for review, and there is no indication that photographs of these stains were made.

### Conclusions

13. Bloodstains were indicated on both cuffs and on both sides of the front of item 121 (flannel shirt) in the sketches from DPS Laboratory in 1994 and 2000.

14. The distribution of the bloodstains on this flannel shirt is indicative of the shirt being worn during incidental contact with exposed blood belonging to Mr. and Mrs. Aguirre.

15. The distribution of the bloodstain pattern[8] on this flannel shirt is not indicative of the distribution that would be created during this violent assault. There are bloodstain patterns that indicate Mrs. Aguirre put forth a considerable struggle with her attacker(s). Such an interaction would be likely to result in a more widespread distribution of stains on a perpetrator's garment than is indicated by the laboratory sketches.

16. As I observed in my affidavit of January 31, 2022, it is vitally important that there be DNA testing of the two areas of bloodstains that Sgt. Rick Pippins described as stains possibly left by a bleeding perpetrator (on Mrs. Aguirre's clothing and on the floor of the laundry room) Texas Ranger Joe Sanders also noted in his report that the drops in the laundry room "gave

---

[6] Texas Department of Public Safety Laboratory DNA Report L-232609, signed by Irma Rios, dated October 17, 2003 (DPS Lab document 029).
[7] **Bloodstain** A deposit of blood on a surface.
[8] **Bloodstain pattern** A grouping or distribution of bloodstains that indicates through regular or repetitive form, order, or arrangement the manner in which the pattern was deposited.

**Affidavit of Paulette Sutton**
*Gonzales v. Lumpkin*

appearance actor was looking for something to clean his hands and arms on"[9] Contrary to widely held belief, multiple drops of blood rarely originate from a bloodied perpetrator or from a bloody weapon. Due to the effects of surface tension, multiple drops indicate that the source is, instead, an actively bleeding individual[10].

17. The new information that I have reviewed makes it even more imperative that DNA testing be done. There is now new evidence from Jesse Perkins himself that he was one of the perpetrators, that he was bleeding during the attack(s), and that he left traces of blood in the Aguirre's' house. This evidence indicates that Perkins is likely the person who left the two areas of bloodstains described by Sgt. Pippins. DNA testing could confirm this.

These findings are based upon the materials provided to date. Submission of additional materials could alter these conclusions.

I, T. Paulette Sutton, swear that the foregoing is true and correct

_____
T. Paulette Sutton

Sworn and subscribed before me this  12th  day of  February , 2022.

_____  Exp 05/08/2023
Notary Public, State of Tennesssee

---

[9] Texas Department of Public Safety Offense Report, Texas Ranger Joe Sanders, p. 5 (Document DPS Lab 025)
[10] James, Kish & Sutton, *Principles of Bloodstain Analysis* (1st ed. 2005 CRC Press), p. 80.

## LABORATORY INFORMATION SHEET

Case Number: L- 232609      (1)          Evidence Received: 5-20-94

Date: ~~1-77-94~~ (1)  10-7-94

Ex 121

\* Multicolored flannel shirt recovered from SH S. Sam Houston.



# LABORATORY INFORMATION SHEET

Case Number: L- 232609 @     Evidence Received: _____

Date: 10/2/00

ITEM 99: PACKAGED IN SEALED PAPER SACK w/IN LARGE BROWN BOX.
- LAB #, DATE, & INITIALS PLACED ON WAISTBAND
- TESTED TMB NEG. 2x.
- BLUE JEANS "WRANGLER"

ITEM 121: PACKAGED IN SEALED PAPER SACK w/IN BROWN BOX.
- PLAID COAT/SHIRT; PURPLE, BROWN, & BLUE; "GREAT OUTDOORS"
- LAB #, DATE, & INITIALS PLACED ON INSIDE OF COLLAR



(FRONT)

STAIN #1A  
STAIN #1B  
STAIN #2  
STAIN #3  
} TMB POS., COLLECTED & PRESERVED

- TWO STAINS WERE COLLECTED FROM THE AREA MARKED AS STAIN #1 & LABELED A & B
- NO STAINS DETECTED ON THE BACK OF THE ITEM

BurWelch-031484- DPS