**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**MIDLAND-ODESSA DIVISION**

| | | |
|---|---|---|
| MICHAEL DEAN GONZALES, | § § § | CIVIL NO. MO:22-cv-0046-DC |
| *Plaintiff,* | § § | |
| v. | § § | **DEATH PENALTY CASE** |
| TRAVIS BRAGG, District Attorney Pro Tem, Ector County; | § § § | |
| MICHAEL GERKE, Chief, Odessa Police Department; | § § § | |
| FREEMAN MARTIN, Director, Texas Department of Public Safety; | § § § § | |
| *Defendants.* | § | |

**PLAINTIFF'S CONSOLIDATED RESPONSE IN OPPOSITION**
**TO DEFENDANTS' MOTIONS TO DISMISS**

Richard Burr
Burr and Welch, PC
PO Box 525
Leggett, TX 77350
713-628-3391
dick@burrandwelch.com

Maureen Franco
Federal Public Defender for the
Western District of Texas
Tivon Schardl
Chief, Capital Habeas Unit
Joshua Freiman
T. Nathaniel Lombardo
Assistant Federal Public Defenders
919 Congress Ave., Ste. 950
Austin, TX 78701
737-207-3010 (phone)
512-499-1584 (fax)
Joshua_Freiman@fd.org

*Counsel for Mr. Gonzales*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS .............................................................................................................................. 1

LEGAL STANDARD ....................................................................................................... 1

ARGUMENT ..................................................................................................................... 2

I.  Gonzales has standing to sue in light of recent Supreme Court precedent. ............ 2

    A.  Gonzales has standing to seek injunctive relief. ........................................... 4

    B.  Gonzales has standing to seek declaratory judgment. ................................... 7

II.  There is no *Rooker-Feldman* bar. ............................................................................ 8

III.  Defendant Martin is not immune from suit under the Eleventh Amendment ......... 8

    A.  Texas law gives DPS particular duties to enforce Chapter 64's statutory scheme .......................................................................................................... 11

    B.  Martin has demonstrated his willingness to enforce his duty. ..................... 14

    C.  Martin enforces Chapter 64 by constraining Gonzales's access to evidence for DNA testing absent a court order. ........................................................... 15

IV.  Defendant Gerke is a proper defendant. .................................................................. 16

    A.  As a preliminary matter, this Court must give effect to Gerke's prior admissions that he has custody of evidence and denied Gonzales access to it. .................................................................................................................... 17

    B.  Gerke's new arguments for dismissal under Rule 12(b)(6) fail. .................. 18

    C.  Gonzales has sufficiently pled Gerke's liability in his official capacity. ............. 19

    D.  Alternatively, Gonzales requests leave to amend the complaint to correct the alleged defect. ....................................................................................... 21

V.  Gonzales has stated a claim on which relief may be granted. ................................. 22

    A.  Gonzales's as-applied procedural due process claim should survive the motion to dismiss. ....................................................................................... 23

    B.  The Fifth Circuit's decision in *Reed* does not control Gonzales's as-applied due process challenge to the rules applied in his case. ..................... 29

    C.  Gonzales's other claims should survive a motion to dismiss. ..................... 30

PRAYER ......................................................................................................................... 30

CERTIFICATE OF SERVICE ...................................................................................... 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Tex. Dep't Ins., Div. of Workers' Comp.*,
     851 F.3d 507 (5th Cir. 2017) ...............................................................11, 13, 15, 16

*Armstrong v. Manzo*,
     380 U.S. 545 (1965)..................................................................................................27

*Ashcroft v. Iqbal*,
     556 U.S. 662 (2009)....................................................................................................2

*Baker v. RR Brink Locking Sys., Inc.*,
     721 F.3d 716 (5th Cir. 2013) .....................................................................................7

*Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007)........................................................................................1, 2, 3, 19

*Bouie v. City of Columbia*,
     378 U.S. 347 (1964)..................................................................................................28

*City of Austin v. Paxton*,
     943 F.3d 993 (5th Cir. 2019) ................................................................................9, 10

*Conner v. Tex. Court of Criminal Appeals*,
     481 F. App'x 952 (5th Cir. 2012) ..............................................................................6

*Crane v. Kentucky*,
     476 U.S. 683 (1986)..................................................................................................25

*Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*,
     557 U.S. 52 (2009)........................................................................................23, 28, 29

*Dombrowski v. Pfister*,
     380 U.S. 479 (1965)....................................................................................................5

*Edionwe v. Bailey*,
     860 F.3d 287 (5th Cir. 2017) ...................................................................................22

*Ex parte Elizondo*,
     947 S.W.2d 202 (Tex. Crim. App. 1996)...................................................................30

*Ford v. Wainwright*,
     477 U.S. 399 (1986)..............................................................................................25, 26

*Gonzales v. State*,
   No. AP-77,104, 2022 WL 663806 (Tex. Crim. App. Mar. 3, 2022) ................................24, 25

*Gutierrez v. Saenz*,
   565 F. Supp. 3d 892 (S.D. Tex. 2021) ..............................................................................24, 30

*Gutierrez v. Saenz*
   145 S. Ct. 2258 (2025)........................................................................................... *passim*

*Gutierrez v. Saenz*,
   93 F.4th 267 (5th Cir. 2024) ......................................................................................3

*Hall v. State*,
   569 S.W.3d 646 (Tex. Crim. App. 2019)..................................................................27

*Holberg v. State*,
   425 S.W.3d 282 (Tex. Crim. App. 2014).................................................................27

*Hutto v. Finney*,
   437 U.S. 678 (1978)..................................................................................................5

*Johnson v. City of Shelby, Miss.*,
   574 U.S. 10 (2014)...................................................................................................20

*Johnson v. Griffin*,
   69 F.4th 506 (8th Cir. 2023) .................................................................................10, 14

*Johnson v. Johnson*,
   385 F.3d 503 (5th Cir. 2004) ..................................................................................2, 10

*Jones v. Flowers*,
   547 U.S. 220 (2006)..................................................................................................27

*Jones v. Greninger*,
   188 F.3d 322, 324 (5th Cir. 1999) ...........................................................................18

*K.P. v. LeBlanc*,
   627 F.3d 115 (5th Cir. 2010) .................................................................................11, 15

*Kyles v. Whitley*,
   514 U.S. 419 (1995)..................................................................................................19

*Leal v. State*,
   303 S.W.3d 292 (Tex. Crim. App. 2009)..................................................................27

*Littell v. Houston ISD*,
   894 F.3d 616 (5th Cir. 2018) ................................................................................20, 23

*Mathews v. Eldridge*,
    424 U.S. 319 (1976).................................................................27

*McCreary v. Richardson*,
    738 F.3d 651 (5th Cir. 2012) ...................................................17

*McLin v. Twenty-First Jud. Dist.*,
    79 F.4th 411 (5th Cir. 2023) .....................................................2

*Mi Familia Vota v. Ogg*,
    105 F.4th 313 (5th Cir. 2024) ...................................10, 11, 15

*Milliken v. Bradley*,
    433 U.S. 267 (1977)..................................................................5

*Mitchum v. Foster*,
    407 U.S. 225 (1972)..................................................................4

*Monacelli v. City of Dallas, Tex.*,
    No. 24-10067, 2024 WL 4692025 (5th Cir. Nov. 6, 2024) ....20

*Moye v. Clerk, DeKalb County Superior Court*,
    474 F.2d 1275 (5th Cir. 1973) ..................................................6

*Ochoa v. Collier*,
    802 F. App'x 101 (5th Cir. 2020) .........................................6, 7

*Pena v. State*,
    353 S.W.3d 797 (Tex. Crim. App. 2011)................................19

*Piotrowski v. City of Houston*,
    237 F.3d 567 (5th Cir. 2001) ..................................................20

*Ramirez v. State*,
    621 S.W.3d 711 (Tex. Crim. App. 2021)................................27

*Reed v. Goertz*,
    136 F.4th 535 (5th Cir. 2025) .......................................*passim*

*Reed v. Goertz*,
    598 U.S. 230 (2023)......................................................*passim*

*Reed v. State*,
    541 S.W.3d 759 (Tex. Crim. App. 2017).................................27

*Russell v. Knight*,
    488 F.2d 96 (5th Cir. 1973) ......................................................6

*Skinner v. Switzer,*
    562 U.S. 521 (2011)................................................................................*passim*

*Smith v. State,*
    165 S.W.3d 361 (Tex. Crim. App. 2005)............................................................27

*Spiller v. City of Texas City,*
    130 F.3d 162 (5th Cir. 1997) ............................................................................20

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016)............................................................................................2

*State v. Patrick,*
    86 S.W.3d 592 (Tex. Crim. App. 2002)......................................................12, 14

*Texas Democratic Party v. Abbott,*
    978 F.3d 168 (5th Cir. 2020) ............................................................................11

*Texas v. Biden,*
    10 F.4th 538 (5th Cir. 2021) ...............................................................................4

*United States v. Cluff,*
    857 F.3d 292 (5th Cir. 2017) ............................................................................30

*United States v. Lanier,*
    520 U.S. 259 (1997)..........................................................................................28

*Washington v. Texas,*
    388 U.S. 14 (1967)............................................................................................25

*Webster v. City of Houston,*
    735 F.2d 838, 842 (5th Cir. 1984) ....................................................................21

*In re Winship,*
    397 U.S. 358 (1970)..........................................................................................28

*Wood v. Patton,*
    2025 WL 629282 (W.D. Tex., Feb. 19, 2025)....................................................7

*Wood v. Patton,*
    130 F.4th 516 (5th Cir. 2025) .............................................................................7

*Wood v. Patton,*
    No. 24-6727, 2025 WL 1787689 (U.S. 2025) .................................................19

*Ex parte Young,*
    209 U.S. 123 (1908)..........................................................................9, 10, 11, 13

## Constitutional Provisions

U.S. Const. amend. XI ................................................................................................9

U.S. Const. amend. XIV ........................................................................................23, 28

## Statutes

42 U.S.C. § 1983 ............................................................................................. *passim*

Fed. R. Civ. P. 8(a)(2) ..............................................................................................2

Fed. R. Civ. P. 12 .......................................................................................2, 17, 18

Fed. R. Civ. P. 12(b) ..............................................................................................18

Fed. R. Civ. P. 12(b)(1) .........................................................................................2, 9

Fed. R. Civ. P. 12(b)(6) .............................................................................2, 17, 18, 23

Fed. R. Civ. P. 12(c) ...........................................................................................2, 18

Fed. R. Civ. P. 15 ...................................................................................................22

Fed. R. Civ. P. 15(a)(2) ...........................................................................................22

Act of Apr. 5, 2001, ch. 2, 2001 Tex. Sess. Law Serv (S.B. 3). ..................................12

Tex. Code Crim. Proc. art. 2A.102 ...........................................................................14

Tex. Code Crim. Proc. art. 2A.104(b)(2) ...................................................................14

Tex. Code Crim. Proc. art. 11.071, § 5(a)(1) ..............................................................30

Tex. Code Crim. Proc. art. 11.071, § 5(a)(2) ..............................................................30

Tex. Code Crim. Proc. art. 11.071, § 5(a)(3) ..............................................................30

Tex. Code Crim. Proc. art. 38.35 .........................................................................14, 16

Tex. Code Crim. Proc. art. 38.35(b) ......................................................................12, 13

Tex. Code Crim. Proc. art. 38.43 .......................................................................14, 16, 18

Tex. Code Crim. Proc. art. 38.43(c)(2)(A) ................................................................12

Tex. Code Crim. Proc. art. 64 ......................................................................... *passim*

Tex. Code Crim. Proc. art. 64.02 ........................................................................14, 18

Tex. Code Crim. Proc. art. 64.03(a)(1)(C) ...................................................................24

Tex. Code. Crim. Proc. art. 64.03(a)(2)(A) ............................................................24, 29

Tex. Code Crim. Proc. art. 64.03(c)(1) ........................................................................13

Tex. Code Crim. Proc. art. 64.03(e) .............................................................................13

Tex. Code Crim. Proc. art. 64.035 ...............................................................................13

Tex. Penal Code art. 7.02 .............................................................................................24

Ark. Code Ann. § 16-112-201-208 ..............................................................................10

**Other Authorities**

Brief for Respondents, *Gutierrez v. Saenz*, 145 S. Ct. 2258 (2025) (No. 23-7809) .......................4

City of Odessa, *Crime Scene Unit, Odessa Police Department*,
    https://www.odessa-tx.gov/543/Crime-Scene-Unit ...............................................21

City of Odessa, *Odessa Police Department*,
    https://www.odessapd.com/381/Police ..................................................................21

Tex. Dep't Public Safety, *Crime Laboratory Division Manual*,
    https://txdpslabs.qualtraxcloud.com/ShowDocument.aspx?ID=67475 ..................................15

**CONSOLIDATED RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Plaintiff Michael Dean Gozales is a Texas death row prisoner who is seeking DNA testing to allow him to show his innocence of the crime he was convicted of and entitlement to a new trial. Texas extends a right to Gonzales and other prisoners to obtain DNA testing of evidence collected in their case. But Gonzales has been unable to vindicate that right because those procedures have become traps that ensnare potentially innocent individuals, rather than reasonable guardrails on a meaningful remedy.

Gonzales has sued the custodians of the evidence who deny him access to the evidence for DNA testing—the Ector County District Attorney who prosecuted his case, the Chief of Police of the Odessa Police Department that investigated his case, and the Director of the Department of Public Safety that conducted the only DNA testing in this case—alleging violations of his constitutional rights under 42 U.S.C. § 1983, seeking declaratory and injunctive relief to give effect to the remedy he has been denied. *See* Am. Compl., ECF No. 23.

The Defendants Freeman Martin, Travis Bragg, and Michael Gerke have moved to dismiss the complaint, alleging various defenses. Martin Mot. to Dismiss (MTD), ECF No. 52; Bragg MTD, ECF No. 53; Suppl. to Bragg MTD, ECF No. 55; Gerke 2nd MTD,[1] ECF 54. Gonzales through this consolidated response now opposes these motions and urges the Court to deny the motions for the reasons set forth below.

**LEGAL STANDARD**

To defeat a motion to dismiss, a complaint need only state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). These factual allegations, accepted as true and viewed in the light most favorable to the nonmoving party,

---

[1] Gerke has filed a previous motion to dismiss and an answer. *See* ECF Nos. 24, 25.

need only "be enough to raise a right to relief above the speculative level." *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The question for a court considering a Rule 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but instead "whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citation omitted). In order to cross the federal court's threshold, the complaint need "not [be] a model of the careful drafter's art," nor need it "pin plaintiff's claim for relief to a precise legal theory." *Id.* at 530. To be sufficient, a complaint must simply state a "plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument." *Id.* (citation omitted); Fed. R. Civ. P. 8(a)(2). A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Johnson v. Johnson,* 385 F.3d 503, 529 (5th Cir. 2004).

A motion attacking the subject matter jurisdiction of the court under Rule 12(b)(1) places the burden of proof on the party asserting jurisdiction, that is, the plaintiff. *McLin v. Twenty-First Jud. Dist.*, 79 F.4th 411, 415 (5th Cir. 2023). "When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court first considers its jurisdiction." *Id.*

## ARGUMENT

The Defendants' attempts to defeat this Court's jurisdiction under Rule 12(b)(1) are meritless and Gonzales has made sufficient factual allegations to defeat the motions to dismiss made under Rule 12(b)(6). For the reasons that follow, each of the Defendants' motions to dismiss must therefore be denied.

## I.    Gonzales has standing to sue in light of recent Supreme Court precedent.

To establish Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Defendant Bragg now makes two standing arguments, neither of which has merit.[2] First, without disputing injury-in-fact or traceability, Bragg claims that Gonzales's injury is not redressable because the injunctive remedy Gonzales seeks is "essentially" a writ of mandamus that the Court lacks power to issue. Bragg MTD at 4. Second, Bragg maintains that Gonzales's request for declaratory relief is also not redressable because it is beyond the Court's authority, even after a recent Supreme Court decision to the contrary. Suppl. to Bragg MTD at 2.

There is no question that Gonzales meets the standing requirements for declaratory and injunctive relief as to Defendants Bragg, Martin, and Gerke. The Supreme Court has now rejected standing arguments in two related cases brought by Texas death-row plaintiffs alleging unconstitutional denial of access to DNA testing under Texas's Chapter 64 remedy. *Reed v. Goertz*, 598 U.S. 230, 234 (2023), and *Gutierrez v. Saenz*, 145 S. Ct. 2258, 2262-65 (2025). The reasoning of those cases governs here.

First, like the plaintiffs in *Reed* and *Gutierrez*, Gonzales "sufficiently alleged an injury in fact: denial of access to the requested evidence." *Gutierrez*, 145 S. Ct. at 2266 (quoting *Reed*, 598 U.S. at 234).

Second, Gonzales has also alleged that Bragg, Martin, and Gerke deny access to the evidence in their custody, control, or possession, and "thereby cause[ ] [Gonzales]'s injury.'" *Id.* (quoting *Reed*, 598 U.S. at 234). At this stage, those allegations must be treated as true. *Twombly*, 550 U.S. at 55.

Third, Gonzales's injury is redressable by a declaratory judgment—and even more so, by an injunction—against the defendants: "if a federal court concludes that Texas's post-conviction DNA testing procedures violate due process" and issues a declaratory judgment, "that court order

---

[2] Neither Martin nor Gerke raise Article III standing as a ground for dismissal.

would eliminate the state prosecutor's justification for denying DNA testing and thereby remove the barrier between [Gonzales] and the requested DNA testing." *Gutierrez*, 145 S. Ct. at 2266 (quoting *Reed*, 598 U.S. at 234).

Critically, *Gutierrez* held that *Reed*'s standing analysis applies not just to prosecutors, but also to other custodians of the evidence who deny access to evidence for testing, like the police chief who was sued in Gutierrez's case and was a respondent before the Supreme Court. *Id.* There, as here, the police chief's own lawyers from the Office of the Attorney General refused to draw a distinction between the redressability analysis as it applied to the chief and as it applied to the prosecutor. Brief of Respondents Saenz and Sauceda at 21 n.5, *Gutierrez*, 145 S. Ct. 2258 (stating that redressability problems "apply equally to" Police Chief Felix Sauceda). The same would be equally true for Defendants Martin and Gerke.

An injunction ordering the release of evidence is even surer than a declaratory judgment to redress Gonzales's injury. *See, e.g.*, *Tex. v. Biden*, 10 F.4th 538, 548 (5th Cir. 2021) (finding an injunction ordering federal officials to reinstate immigration policy "would remedy [plaintiff] Texas's injury"). Whereas "a prosecutor might eventually find another reason . . . to deny a prisoner's request for DNA testing" without violating a declaratory judgment, *Gutierrez*, 145 S. Ct. at 2268, an injunction compelling release of the evidence would remove any doubt.

## A.    Gonzales has standing to seek injunctive relief.

Bragg's first argument must fail, because it flouts this Court's power to issue injunctions against state officers under 42 U.S.C. § 1983 and ignores the holding of *Skinner v. Switzer*, 562 U.S. 521, 534 (2011).

"Congress plainly authorized the federal courts to issue injunctions in § 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress." *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) (quoting 42 U.S.C. § 1983). This Court's equitable power under § 1983 is

necessarily "broad and flexible." *Milliken v. Bradley*, 433 U.S. 267, 288 (1977). It includes the power to compel state actors to take affirmative actions to remedy ongoing constitutional violations, subject to traditional restraints on equitable authority. *Id.* at 279-81.[3]

In *Skinner v. Switzer*, the Supreme Court recognized a federal court's authority to issue an injunction ordering a district attorney to allow access to evidence for DNA testing under 42 U.S.C. § 1983. 562 U.S. at 534. Like here, the *Skinner* plaintiff alleged a violation of procedural due process arising from limits on access to Chapter 64 and (unlike Reed and Gutierrez) requested injunctive relief against the district attorney compelling release of evidence for DNA testing. *Id.* at 529. The Supreme Court granted certiorari to decide whether "a convicted state prisoner seeking DNA testing of crime-scene evidence assert that claim in a civil rights action under 42 U.S.C. § 1983" or instead in federal habeas. *Id.* at 524. The Court held that Skinner "properly invoked § 1983" for his claim for injunctive relief. *Id.* at 534. *Skinner* necessarily determined that an injunction against a state actor compelling access to evidence for DNA testing is a proper exercise of the federal court's authority under § 1983.

If Bragg's mandamus theory were right, *Skinner*'s holding would be reduced to an advisory opinion. It is telling that Bragg fails to even discuss *Skinner*'s holding, let alone explain why he thinks it should be overruled.

---

[3] The question whether this Court has remedial authority is unrelated to the ultimate question whether Bragg or any other defendant *should be* enjoined. The latter determination cannot be made until the court has considered the nature and scope of the violation and weighed other equitable principles, including the Defendants' voluntary compliance to cure the violation. *See Dombrowski v. Pfister*, 380 U.S. 479, 497 (1965) ("The precise terms and scope of the injunctive relief to which appellants are entitled and the identity of the appellees to be enjoined cannot, of course, be determined until after the District Court conducts the hearing on remand."); *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978) (recognizing equitable principle that "state and local authorities have primary responsibility for curing constitutional violations").

The only Fifth Circuit precedent Bragg cites, *Moye v. Clerk, DeKalb Cty. Super. Ct.*, 474 F.2d 1275 (5th Cir. 1973), is clearly distinguishable from Gonzales's § 1983 lawsuit. In *Moye*, the Fifth Circuit dismissed a pro se prisoner's attempt to have the federal court order a state district clerk provide him transcripts pursuant to a request for their production under state law in an active state criminal appellate proceeding. The short, per curiam decision held that "a federal court lacks the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought." *Id.* at 1276.

*Moye* does not apply here. Unlike the prisoner in *Moye*, Gonzales is (1) proceeding under 42 U.S.C. § 1983; (2) seeking a prospective injunction, not mandamus; (3) raising a violation of a federal constitutional right, not a purported state law violation of a request for transcripts; (4) suing state executive officials, not "state courts and their judicial officers"; and (5) not actively interfering in a pending state court proceeding (as addressed in Part II concerning *Rooker–Feldman* below). The Fifth Circuit has distinguished *Moye* on these bases before. *See Russell v. Knight*, 488 F.2d 96, 97 (5th Cir. 1973) (distinguishing *Moye* because prisoner's suit could be construed as habeas action claiming violation of constitutional right); *Conner v. Tex. Crim. App.*, 481 F. App'x 952, 953 (5th Cir. 2012) (citing *Moye* but recognizing that pro se prisoner's claim for relief could be treated as a "cognizable" constitutional "denial-of-access-to-the-courts claim" under § 1983).

To bolster his argument, Bragg improperly cites two non-precedential cases that did not even address his mandamus theory directly. These cases cannot be understood to represent the law of the circuit or to have intentionally expanded the limited holding of *Moye*.[4]

---

[4] Bragg improperly cites *Ochoa v. Collier*, 802 F. App'x 101 (5th Cir. 2020), as though it were precedent. *Ochoa* is an unpublished, per curiam decision in which the court reviewed the denial of a stay of execution (not a dismissal of the underlying action) on an emergency basis two days before the plaintiff's execution. *Id.* at 104. The court took only a cursory look at the state's

Because Bragg's mandamus theory lacks support in the cases cited, and directly contradicts the Supreme Court's ruling in *Skinner*, his standing argument as to injunctive relief should be denied.

### B.    Gonzales has standing to seek declaratory judgment.

Bragg originally raised a separate standing argument—that Gonzales had failed the redressability prong as to his request for declaratory relief. Bragg MTD at 5-7. As stated above, the Supreme Court rejected that redressability argument in *Gutierrez v. Saenz*. Even after *Gutierrez*, Bragg maintains that Gonzales's request for a declaratory judgment fails the redressability prong. He claims Gonzales is seeking a remedy this court cannot grant by directly attacking the state court judgment in an as-applied challenge. Bragg Suppl. MTD at 2.

Bragg is mistaken about two things: First, the Supreme Court has recognized that plaintiffs have standing to bring "as-applied" challenges to Chapter 64's procedures. *See Reed v. Goertz*, 136 F.4th 535, 542 (5th Cir. 2025) (recognizing Reed brought "as-applied" challenge); *Reed*, 598 U.S. at 234 (holding Reed has standing to sue). Bragg cites no case to support his view.

Second, *Reed* and *Skinner* also foreclose Bragg's mischaracterization of Gonzales's complaint as a "direct" attack on the state court judgment. As explained in the next Part, Gonzales does "'not challenge the adverse' state-court decisions themselves, but rather 'targets as unconstitutional the Texas statute they authoritatively construed.'" *Reed*, 598 U.S. at 235 (quoting *Skinner*, 562 U.S. at 532). *See* Part II (addressing *Rooker-Feldman*).

---

jurisdictional defenses to determine whether the plaintiff's claim was likely to succeed and whether the district court had abused its discretion in denying a stay. *Id.*

Similarly, Judge Pitman's decision in *Wood v. Patton* soundly rejected a mandamus argument made by the local prosecutor against declaratory relief. 2025 WL 629282, at *11 (W.D. Tex., Feb. 19, 2025). But the court's incidental suggestion that an order to compel DNA testing—relief the plaintiff there did not seek—*might* be improper was "clearly non-binding dictum unrelated to the issue addressed by the decision of the court." *Baker v. RR Brink Locking Sys., Inc.*, 721 F.3d 716, 721 (5th Cir. 2013) (citation omitted).

Under binding precedent, again, Bragg's second standing argument should be denied.

## II.    There is no *Rooker-Feldman* bar.

Bragg further asserts that Gonzales's claim for relief is barred under the "*Rooker-Feldman*" doctrine. Bragg MTD at 6-7. The Supreme Court's decision in *Reed* explains why Bragg's argument lacks merit: The *Rooker-Feldman* "doctrine prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments. But as th[e] Court explained in *Skinner*, even though a 'state-court decision is not reviewable by lower federal courts,' a 'statute or rule governing the decision may be challenged in a federal action.'" 598 U.S. at 235 (quoting *Skinner*, 562 U.S. at 532). Consequently, *Skinner* and *Reed* held that the plaintiffs did "'not challenge the adverse' state-court decisions themselves, but rather 'targets as unconstitutional the Texas statute they authoritatively construed.'" *Id.* (quoting *Skinner*, 562 U.S. at 532).

The same is true of Gonzales's allegations. Gonzales does not seek a different result under Texas law; in fact, his suit assumes that the CCA correctly and authoritatively rendered its decision construing Texas law. *See* Am. Compl. ¶ 165. He now complains of the constitutional infirmity of the procedures conditioning access to testing under Chapter 64, *in light of* Texas law, including as construed in the CCA's ruling in Gonzales's case.

Bragg does not even cite an offending line in the complaint that places Gonzales's case in a different category than *Reed*, *Skinner*, or *Wood* whose suits have survived this meritless objection. Bragg's motion must be denied.

## III.    Defendant Martin is not immune from suit under the Eleventh Amendment.

Director Martin raises only one defense in his motion to dismiss under Rule 12(b)(1)—that he is immune from suit under the Eleventh Amendment. Martin MTD at 1-5.[5]

---

[5] No other defendant raises a defense of sovereign immunity under the Eleventh Amendment.

Martin is not immune from suit because he falls within the exception to sovereign immunity recognized by *Ex parte Young*, 209 U.S. 123 (1908). Under *Young*, a plaintiff may sue for federal constitutional violations seeking prospective injunctive relief against state officers. *Id.* at 159-60. *Young* requires the state officer to have "some connection with the enforcement of" the challenged law, in order to avoid "merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Id.* at 157.

In *Reed*, the Supreme Court concluded that the local prosecutor fell within *Young*'s exception and was not immune from suit. 598 U.S. at 235. Although the Court did not elaborate on its reasoning, it necessarily rejected the prosecutor's argument that he lacked sufficient connection to the enforcement of Chapter 64. *See id.* at 248, 254 & n.7 (Thomas, J., dissenting) (noting prosecutor's invocation of *Young*'s "some connection" language).

*Reed*'s standing analysis explains the Court's rationale for rejecting sovereign immunity. As this Circuit has explained, the standing and *Young* analyses "'significantly overlap.'" *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (quoting *Air Evac EMS, Inc. v. Tex. Dep't Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)). According to the *Reed* Court, the prosecutor caused the plaintiff's injury by "den[ying] access to the evidence" in his custody and control, unless he obtained a Chapter 64 order. *Reed*, 598 U.S. at 234. A ruling for the plaintiff would increase the likelihood that the prosecutor would "grant access to the requested evidence and that Reed therefore 'would obtain relief that directly redresses the injury suffered.'" *Id.* (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)). *Reed*'s standing conclusion "at the minimum . . . tend[ed] toward a finding that the *Young* exception applies." *Paxton*, 943 F.3d at 1002.

The only Court of Appeals to examine a crime lab director's sovereign-immunity defense in an action challenging a state DNA testing procedure echoed *Reed*'s standing analysis and rejected immunity. In *Johnson v. Griffin*, 69 F.4th 506 (8th Cir. 2023), a death-sentenced prisoner alleged that he was unconstitutionally denied access to testing under the Arkansas DNA testing statute and sought an injunction to compel DNA testing from the prosecuting attorney, attorney general, and state crime laboratory director. The defendants raised sovereign immunity defenses, claiming no connection to the enforcement of the Arkansas DNA testing statute.[6] *Id.* at 511. The Eighth Circuit held they were not entitled to immunity. *Id.* at 513. The court concluded that the state crime lab director had "a sufficient connection because [he] possess[es] and control[s] evidence that [the prisoner] seeks to test, and [has] refused to provide it to him." *Id.* at 513. *Johnson* did not find a meaningful difference between the connection of the *Reed* prosecutor to the enforcement of the Texas DNA statute and the "similar circumstances" of the state crime lab director who allegedly denied the prisoner's access to evidence for testing. *Id.*

For the same reasons as *Reed* and *Johnson*, Martin has a sufficient connection to the enforcement of Chapter 64 against Gonzales.

Applying the "guideposts" that the Fifth Circuit uses to examine whether a defendant has a sufficient connection under *Young* leads to the same result: Martin is susceptible to suit. *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (quoting *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022)).[7]

---

[6] Arkansas' DNA testing statute lays out similar procedures, requirements, and burdens as Chapter 64. *See* Ark. Code Ann. § 16-112-201 through -208.

[7] Martin misrepresents Fifth Circuit precedent as providing a three-prong "test," each element of which Gonzales must supposedly establish. Martin MTD at 3. In fact, the Fifth Circuit recognizes that its "decisions are not a model of clarity on what constitutes a sufficient connection to enforcement," *Mi Familia Vota*, 105 F.4th at 325 (quoting *Texas Democratic Party v. Abbott*,

## A.    Texas law gives DPS particular duties to enforce Chapter 64's statutory scheme.

The first guidepost is whether the state officer has a particular duty to enforce—that is, more than a general duty to follow the law. *Texas Democratic Party v. Abbott*, 978 F.3d 168, 181 (5th Cir. 2020).

Whether an officer has a particular duty to enforce will depend on the form of enforcement. Enforcement for purposes of Gonzales's lawsuit involves constraining or denying access to evidence for DNA testing in a state official's possession unless and until the prisoner obtains a court order through the unconstitutional Chapter 64 procedure. *See Reed*, 598 U.S. at 234 (denial of access to evidence is the relevant injury); *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) ("'Enforcement' typically involves compulsion *or constraint*." (emphasis added)). The form of enforcement does not need to look like the "direct enforcement" at issue in *Young*, threatened civil and criminal prosecution. *Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 519 (5th Cir. 2017). A state officer's role in constraining a plaintiff's access to benefits by giving effect to a challenged statute will be sufficient to establish a connection to enforcement when that constraint "ensures [a statutory] scheme is enforced from start to finish." *Id.*

For an officer's particular duty to enforce to qualify, the challenged statute does not need to vest specific, let alone special, enforcement authority in the officer. *See, e.g.*, *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 786 (5th Cir. 2024) (finding state agency heads, including DPS Director, had a particular duty to enforce because "[a]s heads of Texas law-enforcement agencies, [defendants] have more than just the general duty to see that the state's laws are implemented—they are *directly* responsible for enforcing Texas's criminal laws").

---

961 F.3d 389, 400 n.21 (5th Cir. 2020)), and so uses the term "guideposts" deliberately to reflect ambiguity in the circuit's law.

Texas law provides particular duties to Texas DPS, the Odessa Police Department, and the prosecutor's office which enforce Chapter 64's exclusive remedy. First, all three are entities required by Texas law to "retain[ ] and preserve[ ]" "biological evidence" until Gonzales's death. Tex. Code Crim. Proc. art. 38.43(c)(2)(A); *id.* art. 38.43(b) (applying provision to crime labs, law enforcement agencies, and prosecutor's offices).[8] Gonzales is only entitled to seek DNA testing of that evidence through the Chapter 64 mechanism. *State v. Patrick*, 86 S.W.3d 592, 595 (Tex. Crim. App. 2002) (plurality op.) (Texas courts are "without jurisdiction" to enter orders for post-conviction DNA testing except under Chapter 64). By contrast, "[a] law enforcement agency, prosecutor, or court"—but not a convicted person—"may request a forensic analysis by a crime laboratory of physical evidence if the evidence was obtained in connection with the requesting entity's investigation or disposition of a criminal action and the requesting entity: (1) controls the evidence; (2) submits the evidence to the laboratory; or (3) consents to the analysis." Tex. Code Crim. Proc. art. 38.35(b). These laws place a duty on the custodians of biological evidence to refuse Gonzales the right to have evidence from his case tested for DNA absent a court order.

Chapter 64 also directly imposes particular duties on DPS to carry out its remedial scheme. First, when a court grants a motion for DNA testing, the court may order the DNA testing "be conducted by the Department of Public Safety." Tex. Code Crim. Proc. art. 64.03(c)(1). Then, if DPS does not test the evidence, "the convicting court . . . shall forward the results" prepared by another lab to DPS within 30 days. *Id.* art. 64.03(e). Finally, the court must "order any unidentified DNA profile to be compared with the DNA profiles in: . . . (2) the DNA database maintained by

---

[8] Chapter 64 must be read in tandem with this closely related provision, which the Texas Legislature enacted into law in the same statute, S.B. 3, that codified the right to DNA testing. Act of Apr. 5, 2001, ch. 2, 2001 Tex. Sess. Law Serv. (S.B. 3) (West) (establishing procedures for the preservation of evidence containing DNA and post-conviction DNA testing).

the Department of Public Safety." *Id.* art. 64.035. Therefore, these provisions establish that DPS has a particular duty to enforce Chapter 64—from preserving evidence, to conducting tests, to maintaining databases for facilitating comparisons. *See Air Evac*, 851 F.3d at 519.

Taking Gonzales's allegations as true, Martin has custody and control of evidence Gonzales would seek to access and test, Am. Compl. ¶¶ 1, 11, 60, and denies access to or testing of that evidence except under a court order under Chapter 64, *id.* ¶¶ 1, 2, 7, 180. Additionally, Texas DPS tested evidence at the direction of the Odessa police when the police reopened their investigation in 2000. *Id.* ¶ 56. Those allegations are sufficient to show Martin has "some connection" to the enforcement of Chapter 64. *See Young*, 209 U.S. at 157.

Moreover, Martin's own argument confirms his connection to enforcement of Chapter 64. He avers (without citing to all of the relevant statutes) that his agency may test evidence either "at the behest of local authorities" or else when it is "court-ordered" to do so. Martin MTD at 5; *see* Tex. Code Crim. Proc. art. 38.35(b).

Martin relies on the logical fallacy that, because courts have recognized prosecutors as proper defendants, then *only* prosecutors may be proper defendants. Martin MTD at 3-4. Yet Martin's *non sequitur* is disproven by the Supreme Court's recognition of standing to sue the police chief in *Gutierrez*, 145 S. Ct. at 2262, and *Johnson*'s holding that a crime lab director enjoyed no sovereign immunity, 69 F.4th at 513.

Contrary to Martin's reading of the statute, Article 64.02 does not confer upon the "attorney for the state"—here, the district attorney pro tem[9]— "specific[ ]" and "exclusive[ ]" authority to enforce Chapter 64's requirements. Martin MTD at 4. The "attorney for the state" merely has a

_____

[9] *See* Tex. Code Crim. Proc. art. 2A.102 (district attorney's duties); *id.* art. 2A.104(b)(2) (temporary appointment of attorney for state).

duty to respond to a DNA motion by retrieving evidence that the movant seeks to have tested and delivering it to the court or saying why he cannot. Tex. Code Crim. Proc. art. 64.02(a)(2). But that limited responsibility does not give him power to consent to testing beyond Chapter 64's requirements. *See Patrick*, 86 S.W.3d at 594. The prosecutor's retrieval of evidence does not alter the duty of any other entity required to retain evidence under Tex. Code Crim. Proc. art. 38.43. It also does not alter a law enforcement agency's authority to request forensic DNA testing of evidence. Tex. Code Crim. Proc. art. 38.35(b); *cf.* Am. Compl. ¶¶ 56-57 (alleging OPD reopened its investigation of the murder and submitted evidence for DNA testing based on).

Martin's narrow focus on Article 64.02 also ignores the comprehensive enforcement scheme that Chapter 64 establishes, which imposes several particular duties on DPS, enumerated above. The prosecutor's duty to respond is better understood as reflecting his role as just another custodian of evidence. *See Gutierrez*, 145 S. Ct. at 2266 (referring to *Reed* prosecutor as "custodian of [the] evidence"); *id.* at 2264 (describing Cameron County district attorney as officer "who has custody of the evidence Gutierrez would like tested and whose office prosecuted [him]"). That different entities may have distinct but concurrent responsibilities regarding the same evidence merely demonstrates that enforcement authority is distributed across multiple actors, rather than concentrated exclusively in the attorney for the state. *See Gutierrez*, 145 S. Ct. at 2266; *Skinner*, 562 U.S. at 534.

**B.    Martin has demonstrated his willingness to enforce his duty.**

The next guidepost is "demonstrated willingness to enforce" the statute. *Mi Familia Vota*, 105 F.4th at 329. Gonzales does not need to point to a historical instance of enforcement or threatened enforcement. *See Air Evac*, 851 F.3d at 519. Nevertheless, Martin's own representation that "DPS could not independently grant the relief Gonzales requests if it wanted to," Martin MTD at 5, demonstrates his willingness to enforce Chapter 64 in precisely the manner that the Supreme

14

Court has deemed relevant and problematic: by denying him access to the evidence absent a court order under Chapter 64. *See Reed*, 598 U.S. at 234. DPS's written policy further demonstrates its willingness to enforce Chapter 64's exclusive remedy by prohibiting release of evidence under its control for "defense examinations without a valid court order." Tex. Dep't Public Safety, *Crime Laboratory Division Manual* 10.4(C), https://txdpslabs.qualtraxcloud.com/ShowDocument.aspx?ID=67475.

C.     **Martin enforces Chapter 64 by constraining Gonzales's access to evidence for DNA testing absent a court order.**

Finally, courts look for signs of "compulsion or constraint"—hallmarks of enforcement—in the officer's duties and actions. *K.P.*, 627 F.3d at 124. Martin's ongoing denial of Gonzales's access to evidence is a constraint that causes Gonzales's injury here. *See Reed*, 598 U.S. at 234.

The Fifth Circuit has found state officers subject to *Young*'s exception to sovereign immunity in similar circumstances even when there was no "direct" enforcement. In *K.P.*, "the board members' reliance on the abortion statute to deny liability protection qualified as enforcement." *Air Evac*, 851 F.3d at 519 (citing *K.P.*, 627 F.3d at 125). In *Air Evac*, the court examined whether the state insurance commissioner and state workers' compensation commissioner enforced the Texas Worker's Compensation Act through rate-setting and arbitration decisions that applied the challenged law. 851 F.3d at 519. The court held that those "state defendants obviously *constrain* [the plaintiff]'s ability to collect more than the maximum-reimbursement rate under the TWCA system" and "effectively ensure the maximum-reimbursement scheme is enforced from start to finish." *Id.* DPS effectively ensures enforcement of the Chapter 64 scheme through its constraint on access to evidence for testing.

Martin thus has sufficient connection to the enforcement of the post-conviction DNA testing regime under Chapter 64.

**IV.    Defendant Gerke is a proper defendant.**

Defendant Gerke is the Chief of the Odessa Police Department, the law enforcement agency that was responsible for the investigation of the capital murders for which Gonzales stands convicted and that now has physical possession of the majority of the evidence that Gonzales seeks to have tested. *See* Am. Compl. ¶¶ 32-35 (describing collection of evidence by OPD during investigation). Gerke has been sued in his official capacity as the head of OPD, which, as a matter of law and policy, denies Gonzales access to evidence for testing and has caused his injury. *See Reed*, 598 U.S. at 234.

OPD is responsible for retaining and preserving the crime scene evidence it collected during its investigation in this case. Tex. Code Crim. Proc. art. 38.43. Texas law empowers OPD to order forensic analysis of its evidence at any time. Tex. Code Crim. Proc. art. 38.35(b).

As Gonzales alleged, the OPD previously submitted its evidence for additional testing by DPS in 2000. Am. Compl. ¶¶ 56-57 (describing OPD's submission of evidence after it reopened investigation). Gonzales further alleged that, in 2022, the supervisor of the OPD crime scene unit took photographs of the evidence in their possession and conducted additional examination of a key item Gonzales sought to have tested. Am. Compl. ¶¶ 91-94.

In May 2022, Gerke filed an answer to the amended complaint "subject to" his Rule 12 motion (ECF No. 24) and then filed what he called a motion to dismiss and, in the alternative, a motion for a more definite statement (ECF No. 25).

Raising new arguments, Gerke now purports to move a second time to dismiss after he already filed his answer. He maintains that he is not the proper defendant to be sued and is a complete "stranger" to Gonzales's suit, Gerke 2ndMTD at 7, so the claims against him must be dismissed under Rule 12(b)(6). Gerke's arguments are contradicted by Gerke's own prior admissions and lack merit.

**A.    As a preliminary matter, this Court must give effect to Gerke's prior admissions that he has custody of evidence and denied Gonzales access to it.**

Because Gerke has previously moved to dismiss and answered the amended complaint, this Court must determine the effect of that prior motion and responsive pleading on its consideration of Gerke's second motion to dismiss.

First, Gerke is bound by his admissions in his answer which admitted his custody over certain evidence Gonzales seeks to test and his denial of Gonzales's access to it. *See McCreary v. Richardson*, 738 F.3d 651, 659 n.5 (5th Cir. 2012), *as revised* (Oct. 9, 2013) ("This circuit has long noted that factual statements in pleadings constitute binding judicial admissions."). In his answer, Gerke admitted the truth of Paragraph 6 through 11 of Gonzales's amended complaint. *See generally* ECF No. 24. He therefore admitted that he "has custody of certain evidence designated below," Am. Compl. ¶ 10, and denied or refused access to requested evidence in his possession, *id.* ¶ 7. Although statements made in a motion to dismiss may not carry the same binding effect, Gerke's first motion to dismiss underscores that Gerke's admissions were not inadvertent. There, he disputed that OPD's production of fingerprints and photos to Gonzales did not constitute new evidence, stating that "*the evidence* that was sent to Plaintiff's attorney was not new, but rather photos of the evidence which *had been in OPD's custody for over twenty-five (25) years*." Gerke 1st MTD at 3 (emphasis added).

Second, Gerke may not file a motion to dismiss after he filed an answer. *See* Fed. R. Civ. P. 12(b) (a motion to dismiss must be made "before pleading"). At best, Gerke's most recent motion might be treated as a second motion for judgment on the pleadings under Rule 12(c). *See, e.g.*, *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (treating post-answer motion to dismiss as motion under Fed R. Civ. P. 12(c)).

Third, the arguments Gerke made exclusively in his first Rule 12 motion (ECF No. 25) do not withstand scrutiny: (1) Gerke enjoys no qualified immunity where Gonzales seeks injunctive or declaratory relief, not damages, Gerke 1st MTD at 2; (2) his conclusory assertion that "none of Plaintiff's federal rights have been violated" misstates the standard for Rule 12(b)(6); and (3) his argument that Gonzales stated non-cognizable state-law claims, is plainly disproven by the complaint which seeks relief for violations of constitutional rights. Finally, his request for a more definite statement is limited to the allegation that "Gerke withheld 'newly discovered fingerprint evidence.'" *Id.* at 5.

### B.    Gerke's new arguments for dismissal under Rule 12(b)(6) fail.

In light of Gerke's answer to the amended complaint, Gerke's further arguments that he lacks custody of the evidence are contradicted and meritless.

Seeking to renege his admission of custody, he disputes that the police possess the evidence on the empty formalism that Chapter 64 uses the term the "state." Yet Chapter 64 assumes someone other than the prosecutor has some of the evidence—that is why the prosecutor is told to retrieve it. Tex. Code Crim. Proc. art. 64.02(a)(2). OPD is required to preserve the evidence it collected during its investigation based on requirements from the same Texas statute that created Chapter 64. Tex. Code Crim. Proc. art. 38.43; *see* note 8, *supra*. Moreover, for due process purposes, courts have rejected any shell game about the police being separate from "the State." "'[T]he State' includes, in addition to the prosecutor, other lawyers and employees in his office and *members of law enforcement* connected to the investigation and prosecution of the case." *Pena v. State*, 353 S.W.3d 797, 810 (Tex. Crim. App. 2011) (emphasis added); *accord Kyles v. Whitley*, 514 U.S. 419, 437 (1995). Furthermore, this Court must take Gonzales's specific allegations as true, including that the police possess the evidence, control it, and deny him access to it. *See Bell Atl. Corp.*,

550 U.S. at 555. Gerke fails to address the allegations that: OPD collected the evidence and preserved it; submitted it for testing before the 1995 trial; submitted it again to DPS for DNA testing in 2000 based on its own reinvestigation; and took photographs of the evidence and examined it in 2022. Am. Compl. ¶¶ 32-35, 56-57, 91-94. These allegations are more than adequate to show that OPD exercises control of the evidence.

Gerke supports his argument with two Fifth Circuit decisions about standing that the Supreme Court has reversed and vacated. Those decisions now undermine Gerke's argument. Gerke 2nd MTD at 8 (citing *Gutierrez v. Saenz*, 93 F.4th 267, 272 (5th Cir. 2024), *rev'd*, 145 S. Ct. 2258 (2025); *Wood v. Patton*, 130 F.4th 516, 520-21 (5th Cir. 2025), *cert. granted, judgment vacated and remanded*, No. 24-6727, 2025 WL 1787689, at *1 (U.S. June 30, 2025)). A prisoner has Article III standing to sue a police chief in his official capacity, where his department investigated the prisoner's case and is the custodian of at least some of the evidence the prisoner seeks to have tested. *Gutierrez*, 145 S. Ct. at 2262 (citing *Reed*, 598 U.S. at 234); *see also* discussion in Part I.A, *supra* (standing to sue).

### C.    Gonzales has sufficiently pled Gerke's liability in his official capacity.

Finally, Gerke relies on an illegitimate heightened pleading standard to argue that Gonzales has failed to specially allege a police department policy or custom that can establish Gerke's role in this official-capacity suit. Gerke 2nd MTD at 5, 8-9.

To survive a motion to dismiss, "a complaint need not contain 'detailed factual allegations'; rather, it need only allege facts sufficient to 'state a claim for relief that is plausible on its face.'" *Littell v. Houston ISD*, 894 F.3d 616, 622 (5th Cir. 2018) (quoting *Ashcroft*, 556 U.S. at 678). Accordingly, the Supreme Court has rejected heightened pleading standards for § 1983 claims

against municipal officers sued in their official capacities. *Id.* (citing *Leatherman v. Tarrant Cnty. Narcotics Intell. & Coordination Unit*, 507 U.S. 163, 164 (1993)).[10]

Gonzales satisfies his burden at this stage because he "stated simply, concisely, and directly" events that, he alleges, entitle him to injunctive and declaratory relief from Gerke. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014). That is, he has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Monacelli v. City of Dallas, Tex.*, No. 24-10067, 2024 WL 4692025, at *1 (5th Cir. Nov. 6, 2024) (quoting *Ashcroft*, 556 U.S. at 678).

The relevant practice of the police department is the department's refusal to provide access to evidence for testing, which Gonzales has alleged. Am. Compl. ¶¶ 7, 10; *see Reed*, 598 U.S. at 234 (defining injury and causation for standing). Just as a policy or custom refusing access to evidence for testing causes the injury for the purpose of Article III standing, *Reed*, 598 U.S. at 234, it also must be understood to establish the "moving force" prong of *Monell*. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 n.16 (5th Cir. 2001) (equating "moving force" prong with "causation"). And Gonzales identified Gerke in his official capacity because it is reasonable to infer that as chief, he is the policymaker for his department. *See Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984), *on reh'g,* 739 F.2d 993 (5th Cir. 1984) (en banc).[11]

Gonzales will easily be able to prove Gerke's liability for a department policy or custom of refusing access to evidence for testing. OPD's website makes a public record of relevant facts

---

[10] The 1997 case Gerke cites, *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997), relied on the pre-*Leatherman* circuit rule of heightened pleading, and thus does not correctly describe Gonzales's burden.

[11] Gerke admitted that he "refus[es] . . . to provide the Plaintiff access to or testing of the requested evidence." Am. Compl. ¶ 7; Gerke Answer, ECF No. 24, at 2 (admitting ¶ 7). This establishes that Gerke acts with authority over his department and is responsible for the department's refusal to provide Gonzales access to the requested evidence.

necessary to establish Gerke's liability for a department policy of retaining evidence and refusing access to it for testing: "The Chief of Police serves as the chief administrator of the Odessa Police Department, is responsible for policy development, control, supervision, and program implementation of this Department and is accountable for the effective delivery of police services to the community." City of Odessa, *Odessa Police Department*, https://www.odessapd.com/381/Police. The OPD has a Crime Scene Unit whose technicians oversee "the care, custody and control of all property and evidence recovered and generated during the investigation of a crime." City of Odessa, *Crime Scene Unit, Odessa Police Department*, https://www.odessa-tx.gov/543/Crime-Scene-Unit ("Property & Evidence Technicians" tab). The Crime Scene Unit "preserve the evidence until requested for analysis, courtroom proceedings or until the statute of limitations expires" and "[f]ollow[] procedures set forth in the Texas Criminal Code of Procedure" for the release and destruction of evidence. *Id.*

Gonzales has therefore pled sufficient facts from which the Court could reasonably infer that Gerke is liable in his official capacity. Gonzales will be able to prove Gerke's liability at summary judgment.

### D. Alternatively, Gonzales requests leave to amend the complaint to correct the alleged defect.

If the Court finds Gonzales's complaint is technically defective for failing to plead sufficient factual allegations regarding OPD's policy or custom of refusing evidence, Gonzales would respectfully request leave to amend his complaint to correct the deficiency. Fed. R. Civ. P. 15(a)(2).

Gonzales would propose to amend his complaint by pleading the following specific allegations: the police chief is the policymaker for the Odessa Police Department (OPD); OPD has a Crime Scene Unit (CSU) that retains and preserves crime scene evidence, including biological

evidence, in accordance with Texas law; OPD CSU has a written policy regarding the department's retention of crime scene evidence; OPD has a written policy restricting access to its 'vault' where it keeps evidence; the written policy states that "inquiries made for other than law enforcement purposes will not be allowed under any circumstances"; OPD CSU does not have a laboratory capable of conducting DNA testing; OPD has a written policy or practice of refusing to submit evidence for biological or other testing by a crime laboratory such as DPS when a case has been closed; OPD retains discretion to reopen closed cases and to submit evidence for further forensic analysis, including for DNA testing.

It would be inconsistent with the liberal spirit of Rule 15 to deny amendment to address this defense, raised for the first time by Gerke. Gonzales proposes specific allegations for a proposed amendment that would cure any deficiency. His request is not dilatory, especially given the procedural confusion Gerke has caused through his piecemeal, successive motions and responsive pleadings, and the fact Gerke did not raise this issue until now—his fifth motion to dismiss or answer. *See* Gerke 1st MTD, ECF No. 25; Gerke Answer, ECF No. 24; *see also* Gerke 1st MTD to Orig. Compl., ECF No. 20; Gerke Answer to Orig. Compl., ECF No. 19; *Edionwe v. Bailey*, 860 F.3d 287, 294 (5th Cir. 2017) (holding that leave to amend is not required where movant fails to apprise court of facts movant would plead in amended complaint to cure any deficiencies).

## V.    Gonzales has stated a claim on which relief may be granted.

Gonzales has raised four claims for relief in his amended complaint, alleging violations of his constitutional rights to procedural due process in vindicating a right to a state-created liberty, Am. Compl. ¶¶ 161-81 (Claim I); access to courts, *id.* ¶¶ 182-92 (Claim II); prohibition on cruel and unusual punishment, *id.* ¶¶ 193-94 (Claim III); and equal protection, *id.* ¶¶ 195-99 (Claim IV).

Defendants Bragg and Gerke argue that Gonzales has not stated a claim on which relief may be granted.[12] For the reasons that follow, Gonzales has met his burden at this stage to "allege facts sufficient to 'state a claim for relief that is plausible on its face.'" *Littell*, 894 F.3d at 622 (quoting *Ashcroft*, 556 U.S. at 678).

### A.    Gonzales's as-applied procedural due process claim should survive the motion to dismiss.

Gonzales's claim under the Due Process Clause has two elements: (1) "deprivation by state action of a protected interest in life, liberty, or property," and (2) "inadequate state process." *Reed*, 598 U.S. at 236.

Although the Supreme Court recognizes no "freestanding" substantive right to post-conviction access to evidence for DNA testing, *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 72 (2009), states may "elect to confer such a right." *Reed v. Goertz*, 136 F.4th 535, 543 (5th Cir. 2025) (citing *Osborne*, 557 U.S. at 67-68). And when states do create such a right, the procedures for vindicating that right to access evidence for DNA testing must comport with due process. *Id.*; *Osborne*, 557 U.S. at 68. A state's post-conviction procedures will violate due process if they are "fundamentally inadequate to vindicate the substantive rights provided." *Reed*, 136 F.4th at 543 (quoting *Osborne*, 557 U.S. at 69).

Texas has provided convicted persons a right to forensic DNA testing under Texas Code of Criminal Procedure art. 64 ("Chapter 64"). Texas conditions the right to testing on meeting several requirements. *See Reed*, 136 F.4th at 541 (enumerating statute's requirements); *Gonzales v. State*, No. AP-77,104, 2022 WL 663806, at *5 (Tex. Crim. App. Mar. 3, 2022) (same). Especially relevant here are two requirements: First, the court must find that "identity was or is an issue in the case" before granting testing. Tex. Code Crim. Proc. art. 64.03(a)(1)(C). Second, the person

---

[12] Martin has not raised a Rule 12(b)(6) defense.

seeking testing must show that he "would not have been convicted if exculpatory results had been obtained through DNA testing." *Id*. art. 64.03(a)(2)(A). The CCA affirmed the denial of Gonzales's DNA testing motion on these grounds. *Gonzales*, 2022 WL 663806, at *8-*10.

Chapter 64's procedures violate due process when they render access to state post-conviction relief "illusory." *See Gutierrez v. Saenz*, 565 F. Supp. 3d 892, 910 (S.D. Tex. 2021) (holding "a bar on Chapter 64 DNA testing to demonstrate innocence of the death penalty renders [Texas Code of Criminal Procedure] Article 11.071, § 5(a)(3) illusory.").[13]

In particular, Gonzales's case includes two rules that arbitrarily and unfairly restrict access to Chapter 64 and defy due process as applied to his case and those similarly situated: (1) the resentencing rule, Am. Compl. ¶¶ 174-76; and (2) the hypothetical party instruction rule, *id*. ¶¶ 177-78. The two rules are used to construe art. 64.03(a)(2)(A)'s exoneration requirement.

The *resentencing rule* holds that a court should consider post-trial evidence presented during a resentencing as a reason to deny testing under art. 64.03(a)(2)(A), even though that evidence was not presented or considered by the jurors who convicted the defendant at the trial on guilt or innocence. *Gonzales v. State*, 2022 WL 663806, at *10 n.11; Am. Compl. ¶ 174.

The *hypothetical party instruction rule* holds that a defendant must show not only that he would not have been convicted of the offense of capital murder as the jury was instructed in its charge, but also that he would not have been convicted under a theory of accomplice liability (as "party" to a capital murder committed by another, under Tex. Penal Code § 7.02), even though the jury was not instructed on such a theory. *Gonzales v. State*, 2022 WL 663806, at *10; Am. Compl. ¶ 177.

---

[13] The district court's constitutional holding has not been reviewed by an appellate court yet. *Gutierrez*, 145 S. Ct. at 2269.

In a variation on the hypothetical party instruction rule, the CCA also concluded that Gonzales could not show "identity" was or is at issue because "DNA testing would not determine the identity of the person who committed the offense" and the prosecution "did not foreclose the possibility that others were also involved in the crime" *Gonzales*, 2022 WL 663806, at *8.

Gonzales has plausibly alleged facts sufficient to show that these rules violate due process for at least four reasons.

First, these rules are arbitrary. "The touchstone of due process is protection of the individual against arbitrary action of government." *Reed*, 136 F.4th at 543 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974). The resentencing rule arbitrarily invites post-trial evidence from a proceeding directed at adjudging punishment to be considered as grounds *against* testing, while barring post-trial evidence *in favor* of testing that might affect a jury's consideration of guilt. The hypothetical party instruction rule permits the state to deliberately abandon a theory of accomplice liability for an offense at trial and yet reap the rewards of the *abandoned* theory of the offense.

In the trial context, when the government introduces evidence to support its position, it is a fundamental feature of due process that defendants must have a meaningful opportunity to challenge that evidence and present contrary evidence of innocence. *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense"); *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).

The opportunity to answer the state's evidence is not limited to trial rights; it is a feature of the fundamental fairness of post-conviction procedures, too. In *Ford v. Wainwright*, 477 U.S. 399 (1986), the Court held that Florida's post-conviction process for adjudicating competency to be executed violated procedural due process. The *Ford* Court found that the procedure "invite[d]

arbitrariness and error by preventing the affected parties from offering contrary medical evidence or even from explaining the inadequacies of the State's examinations." *Id.* at 424-25 (Powell, J., concurring); *id.* at 415 (plurality op.).

Second, these rules are especially unfair as applied to Gonzales, whose jury was not given the opportunity to consider accomplice liability and who was prevented from attacking his guilt during his resentencing. At trial, the jury was instructed on one capital murder theory: "murdering more than one person during the same criminal transaction." Am. Compl. ¶ 52 (quoting direct appeal opinion of CCA); Gerke Answer (admitting ¶ 52). "No parties charge was given in this case." Am. Compl. ¶ 52. "Therefore, the jury had to find *appellant* murdered both victims." *Id.*

In Gonzales's resentencing, moreover, he was prohibited from introducing residual doubt evidence that would challenge the State's weak case on guilt and innocence. Am. Compl. ¶ 63. This is especially remarkable since the police had initiated forensic DNA testing of much of the physical evidence after Gonzales's trial and the DPS crime lab generated new results that *excluded* Gonzales as the contributor to any of the interpretable DNA on the evidence. *Id.* ¶¶ 56-62. Then, after disabling Gonzales from presenting a challenge to the guilt evidence, the State proceeded to present testimony from witnesses that significantly altered its theory of how the crime was committed. *See id.* ¶¶ 64-66. Gonzales was unable to introduce the exculpatory DNA results from the State's own testing. Therefore, under the circumstances of Gonzales's case, his Chapter 64 motion was doomed to fail for reasons that were beyond his control. He could not rebut a parties charge that was not made at his trial. And he could not present an adequate defense against the State's additional evidence presented at his resentencing.

It would be offensive enough to fundamental fairness if these rules had been applied in a clear, prospective manner. But Gonzales could not have known in advance that his access to the

Chapter 64 remedy was a mirage, because no statute or court decision notified him that these arbitrary rules existed until *after* they were applied in his case.

Third, therefore, the way Texas announces Chapter 64's procedural requirements defies fundamental tenets of notice and an opportunity to be heard. *See Jones v. Flowers*, 547 U.S. 220, 226-38 (2006) (explaining that due process requires reasonable notice); *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.") (internal quotation omitted); *Armstrong v. Manzo*, 380 U.S. 545, 550 (1965) (explaining that failure to provide notice "violated the most rudimentary demands of due process of law").

The very existence of the resentencing and hypothetical party instruction rules was unforeseeable until the CCA announced them in its opinion affirming the denial of DNA testing in Gonzales's case. CCA precedent had previously established that courts may not consider any post-trial evidence in determining whether to grant a DNA motion. *E.g.*, *Ramirez v. State*, 621 S.W.3d 711, 723 (Tex. Crim. App. 2021).[14] CCA precedent had also interpreted Chapter 64 provisions to reflect how the jury was instructed and charged. *See Leal v. State*, 303 S.W.3d 292, 302 (Tex. Crim. App. 2009); *Smith v. State*, 165 S.W.3d 361 (Tex. Crim. App. 2005) (emphasizing that the exculpatory nature of DNA results must pertain to the specific offense for which the individual is convicted).

In fact, the district attorney pro tem argued that these were "new rules" that should be placed in a published decision. Am. Compl. ¶¶ 160, 176 (resentencing rule is "a new rule of law or a modification of the rule announced in" prior CCA decisions), 177 ("The State has located no

---

[14] *Accord Hall v. State*, 569 S.W.3d 646, 656 (Tex. Crim. App. 2019); *Reed v. State*, 541 S.W.3d 759, 774 (Tex. Crim. App. 2017); *Holberg v. State*, 425 S.W.3d 282, 287 (Tex. Crim. App. 2014).

other published opinion where [the CCA] relied on the 'party or principal' language . . . but where a parties charge was not submitted to the jury.").

It is fundamentally unfair and violates due process when a state court expands or reinterprets procedural rules that depart sharply from established precedent and applies those changes retroactively. *See Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964) ("When a state court overrules a consistent line of procedural decisions with the retroactive effect of denying a litigant a hearing in a pending case, it thereby deprives him of due process of law 'in its primary sense of an opportunity to be heard and to defend [his] substantive right.'") (quoting *Brinkerhoff-Faris Tr. & Sav. Co. v. Hill*, 281 U.S. 673, 681 (1930))*; United States v. Lanier*, 520 U.S. 259, 266 (1997).

Fourth, these rules undermine bedrock guarantees of a fair trial. Texas's Chapter 64 procedure licenses the consideration of uncharged theories of liability and evidence that were not presented at a trial on a defendant's guilt or innocence. This conflicts with the essence of Due Process in criminal cases: "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364-65 (1970). *Osborne* assumed that a state could enjoy greater "flexibility" in its procedures precisely *because* a defendant already had a fair shot to "demand that the government prove its case beyond reasonable doubt." But "[o]nce a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears." *Osborne*, 557 U.S. at 68-69 (quoting *Herrera v. Collins*, 506 U.S. 390, 399 (1993)). The Texas procedures as applied to Gonzales upset that assumption.

Gonzales has made sufficient factual allegations to support a plausible claim that the exoneration requirement and identity requirement of Chapter 64 as applied to him and similarly situated individuals offend fundamental fairness and his right to due process of law.

**B.**     **The Fifth Circuit's decision in *Reed* does not control Gonzales's as-applied due process challenge to the rules applied in his case.**

Bragg and Gerke argue the Court should dismiss the due process claim because it is "indistinguishable" from the Fifth Circuit's *Reed* decision. Bragg MTD at 8; Gerke 2nd MTD at 9.

In *Reed*, the Fifth Circuit examined Article 64.03(a)(2)(A)'s "exoneration requirement." 136 F.4th at 546-48. According to the court, Reed challenged two features of the exoneration requirement: (1) it does not treat DNA test results that would inculpate a third party as "exculpatory results"; and (2) it "excludes consideration of post-trial factual developments." *Id.* at 547. The court found that *Osborne* had already found materiality requirements "permissible," so Reed could not sustain a facial challenge to the high bar Texas's exoneration requirement imposed as a prerequisite for testing. *Id.* at 547. In conclusion, the court held that the claim was properly dismissed because there was nothing fundamentally inadequate about the statute's requirement on its face or as applied to Reed. *Id.* at 548.

Gonzales concedes that the aspects of his claim that concerned Article 64.03(a)(2)(A)'s high standard for obtaining testing and exclusion of post-trial factual developments are now controlled by *Reed*. *See* Am. Compl. ¶¶ 164-71. Yet Gerke and Bragg's suggestions that *Reed* controls the rest of Gonzales's claim lack support. *Reed* did not touch the remaining allegations in Gonzales's complaint, which must be reviewed on their own merit. *See id.* ¶¶ 173-80.

Bragg admits that Gonzales challenged "new rules," but says they are mere "artful pleading." Bragg MTD at 8. Bragg may not backtrack from what his predecessor already admitted: the resentencing, hypothetical parties instruction were new rules. *See* Am. Compl. ¶¶ 160, 176, 177. *United States v. Cluff*, 857 F.3d 292, 301 (5th Cir. 2017) ("Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding.") (citation modified).

Gerke misreads *Reed* as somehow covering the issues Gonzales raises. Yet *Reed* could not have addressed the as-applied challenge Gonzales raises, because those issues emerged in the CCA's 2022 opinion in Gonzales's case and were not implicated by the facts of Reed's case, in which there was no resentencing and no allegation of another party with whom Reed might have committed the murder. *See Reed*, 136 F.4th at 540 (summarizing facts of Reed's offense and trial).

At this stage, Gonzales has done enough to survive a motion to dismiss by plausibly alleging a due process violation.

### C.    Gonzales's other claims should survive a motion to dismiss.

Gonzales's remaining claims plausibly allege claims for relief. At a minimum, the district court decision in *Gutierrez* shows that Gonzales could plausibly win relief on his theory that the denial of access to Chapter 64 deprives him of access to the ability to secure habeas relief for a claim of actual innocence under Tex. Code Crim. Proc. art. 11.071, §§ 5(a)(1), 5(a)(2); *Ex parte Elizondo*, 947 S.W.2d 202 (Tex. Crim. App. 1996). *See Gutierrez*, 565 F. Supp. 3d at 910-11. *See* Am. Compl. ¶¶ 182-92.

### PRAYER

For the foregoing reasons, the Court should deny the Defendants' motions.

Respectfully submitted,

Maureen Franco
Federal Public Defender for the
Western District of Texas

Tivon Schardl
Chief, Capital Habeas Unit
/s/ Joshua Freiman
Joshua Freiman
NY Regis. No. 5353545
T. Nathaniel Lombardo
Texas Bar No. 24116683
Assistant Federal Public Defenders
919 Congress Ave., Ste. 950
Austin, TX 78701
737-207-3010 (phone)
512-499-1584 (fax)
Joshua_Freiman@fd.org

Richard Burr
Texas Bar No. 24001005
Burr and Welch, PC
PO Box 525
Leggett, TX 77350
713-628-3391
dick@burrandwelch.com

*Counsel for Michael Dean Gonzales*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing will be served on counsel for all Defendants using the CM/ECF system.

/s/ Joshua Freiman
Joshua Freiman

*Counsel for Mr. Gonzales*