### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **MICHAEL DEAN GONZALES,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **CIVIL NO. MO:22-cv-046-DC** |
| | § | |
| | § | |
| **TRAVIS GOLDEN BRAGG,** | § | |
| **District Attorney Pro Tem, Ector County;** | § | **\*  DEATH PENALTY CASE  \*** |
| | § | |
| **MICHAEL GERKE, Chief,** | § | |
| **Odessa Police Department; and** | § | |
| | § | |
| **FREEMAN MARTIN, Director,** | § | |
| **Texas Department of Public Safety;** | § | |
| | § | |
| *Defendants.* | § | |

### <u>ORDER DISMISSING COMPLAINT</u>

Plaintiff Michael Dean Gonzales, a Texas death-row inmate, filed this civil-rights lawsuit pursuant to 42 U.S.C. § 1983 arguing that the denial of his motion for DNA testing in state court denied him, among other things, the right to due process of law and access to the courts. Currently pending before the Court are Gonzales's Amended Complaint (Doc. 23) and a Motion to Dismiss filed by each Defendant[1] (Docs. 52-54).  Also before the Court are Gonzales's Consolidated Response (Doc. 58) and City Defendant's Reply thereto (Doc. 60).

For the reasons discussed below, the Defendants' Motions to Dismiss are granted and Gonzales's Amended Complaint is dismissed for failure to state a claim upon which relief may be granted.

---

[1]     Gonzales has sued the following individuals in their official capacities:  the Director of the Texas Department of Public Safety ("State Defendant"), the District Attorney Pro Tem for Ector County ("County Defendant"), and the Chief of the Odessa Police Department ("City Defendant").

# I. Background

## A.    The Offense

In December 1995, Gonzales was convicted by an Ector County jury and sentenced to death for the gruesome murder of his two elderly neighbors, Manuel and Merced Aguirre, in their home in Odessa, Texas. The Texas Court of Criminal Appeals (TCCA) succinctly summarized the evidence introduced during Gonzales's capital murder trial in their 2022 opinion affirming the denial of DNA testing:

> Before [Gonzales]'s 1995 trial on guilt, the State had no DNA evidence placing him at the scene. But it had other evidence that arguably did. According to the evidence presented at trial, [Gonzales] lived just across the alley from the victims. Although the Aguirres had financially assisted [Gonzales]'s family in the past, at some point they refused to help [Gonzales] directly. The Aguirres' son stated that his parents feared [Gonzales]. [Gonzales] was identified as selling items, including a firearm, stolen from the Aguirre home after the murders. In fact, [Gonzales]'s fingerprint was found on the Aguirres' stolen stereo. What appeared to be blood transfer was discovered on a camper parked in the alley between the Aguirres' home and [Gonzales]'s, and the alley looked like it had been recently swept. An unidentified witness told officers that she saw [Gonzales] sweeping the alley near the time of the instant offense. Upon searching [Gonzales]'s home, authorities found a single edged knife that the medical examiner testified was consistent with the murder weapon. Finally, [Charles] Kenimer testified that when he was returning [Gonzales] to his cell after he had been interviewed by detectives, [Gonzales] seemed upset, so Kenimer tried to calm him. At that time [Gonzales] stated, "They are trying to pin this rap on me this murder rap on me. They can't do it. They don't have any evidence." [Gonzales] then continued to say that, "Although I did it, you know, but they don't have nothing to go on."

*Gonzales v. State*, No. 77,104, 2022 WL 663806, at *9 (Tex. Crim. App. Mar. 3, 2022), *reh'g denied* (Jan. 10, 2024).

## B.    Procedural History

After hearing the evidence, the jury convicted Gonzales of capital murder and answered the punishment questions in a manner that required the trial court to sentence Gonzales to death. *State v. Gonzales*, No. D-23,730 (358th Dist. Ct., Ector Cnty., Tex. Dec. 7, 1995). The TCCA

affirmed Gonzales's conviction and sentence on direct appeal and later denied his request for state habeas corpus relief. *Gonzales v. State*, No. 72,317 (Tex. Crim. App. June 3, 1998) (unpublished); *Ex parte Gonzales*, No. 40,541-01 (Tex. Crim. App. March 10, 1999) (unpublished).

Gonzales then sought federal habeas corpus relief in this Court. The Honorable Royal Furgeson, U.S. District Judge, denied relief concerning his conviction but, based on a confession of error by the Texas Attorney General's office, vacated Gonzales's sentence of death and ordered a new punishment trial. *Gonzales v. Cockrell*, No. 7:99-cv-00073 (W.D. Tex. Dec. 19, 2002) (unpublished). The Fifth Circuit eventually affirmed the district court's denial of guilt-phase relief in a published opinion issued in July 2006. *Gonzales v. Quarterman*, 458 F.3d 384 (5th Cir. 2006), *cert. denied*, 549 U.S. 1323 (2007).

The trial court held a new punishment hearing in May 2009. During this trial, the State presented testimony from Gonzales's wife, Martha Reyes, that she was terrified of Gonzales and that her original statement to police (that she was asleep at the time of the murders) was false. *See Gonzales*, 2022 WL 663806, at *10. Reyes testified that Gonzales planned to rob the Aguirres but knew they would not open the door for him, so he made her go over to their house to visit. *Id*. As she was leaving, she saw Gonzales, alone, on his way over to the Aguirres' home. *Id*. When he returned home, Gonzales had blood on his clothes and a knife in his hand, and stated that there had been an "accident." *Id*. During her testimony, Gonzales threatened Reyes for testifying. *Id*. After hearing all of the testimony, the jury again answered the punishment questions in a manner that required the trial court to sentence Gonzales to death. *Id*.

The TCCA affirmed Gonzales's sentence of death on direct appeal. *Gonzales v. State*, 353 S.W.3d 826 (Tex. Crim. App. 2011). Gonzales thereafter waived his statutory right to file

an initial state habeas corpus application in November 2010, and the TCCA later dismissed a subsequent application filed on his behalf in June 2015. *Ex parte Gonzales*, No. 40,541-03 (Tex. Crim. App.) (unpublished); *Ex parte Gonzales*, No. 40,541-04, 463 S.W.3d 508 (Tex. Crim. App.). Gonzales also unsuccessfully sought federal habeas corpus relief, culminating in the Supreme Court's denial of his petition for certiorari review in February 2020. *Gonzales v. Davis*, 924 F.3d 236 (5th Cir. 2019); *Gonzales v. Davis*, 140 S. Ct. 1143 (2020).

## C.    Request for DNA Testing

In December 2020, Gonzales filed a motion with the trial court, pursuant to Chapter 64 of the Texas Code of Criminal Procedure, to have post-conviction DNA testing performed on a number of items, including fingernail scrapings from both victims, hair and blood evidence collected at the crime scene, and hair and blood evidence collected from an alternative suspect.[2] *Gonzales*, 2022 WL 663806, at *5. After holding a non-evidentiary hearing on the matter, the trial court denied Gonzales's DNA motion, finding Gonzales failed to: (1) show that identity is or was an issue, (2) establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing, and (3) establish by a preponderance of the evidence that his request for DNA testing was not made to unreasonably delay the execution of his sentence or the administration of justice. *Id*. at *7.

On appeal, the TCCA affirmed the trial court's denial of DNA testing in a *per curiam* opinion delivered March 3, 2022. *Id*. at *1. The TCCA agreed with the trial court that Gonzales failed to establish that identity was in an issue in this case or that he would not have been

---

[2]    In essence, Article 64.03(a) of Chapter 64 allows for post-conviction DNA testing of evidence if the state trial court finds: "(1) the unaltered evidence is available for testing; (2) identity was an issue in the case; (3) the convicted person establishes by a preponderance of the evidence that he would not have been convicted if DNA testing provided exculpatory results; and (4) the motion is not made to delay the execution of a sentence." *See Emerson v. Thaler*, 544 F. App'x 325, 328 (5th Cir. 2013) (unpublished).

4

convicted if exculpatory results had been obtained through DNA testing.  *Id*. at *8-10.  And while the court did not specifically agree with the trial court's determination of unreasonable delay, it found any error in such a determination to be harmless in light of the other findings.  *Id*. at *11.  Gonzales moved for rehearing of the TCCA's order, but this request was denied without written order on January 10, 2024.  *Id*. at *1.

## II.  Gonzales's Complaint

Gonzales filed the instant civil-rights action under 42 U.S.C. § 1983 on March 1, 2022, which he later amended.  (Docs. 1, 23).[3]  In the amended complaint, Gonzales challenges the constitutionality of Chapter 64 "both on its face and as applied" by Texas courts. (Doc. 23 at 3).  Specifically, Gonzales asserts that Chapter 64 violates due process by arbitrarily and unfairly restricting access to DNA testing, effectively precluding him from demonstrating his innocence in either a post-conviction application for habeas corpus relief or a request for executive clemency.  He also contends the TCCA's interpretation of Chapter 64 has unconstitutionally deprived him of his rights to access the courts, to be free from cruel and unusual punishment, and to equal protection under the law.

Gonzales seeks the following relief:  (1) a declaratory judgment from this Court stating that Chapter 64 unconstitutionally limits access to DNA testing, thus depriving him of meaningful access to post-conviction remedies, and (2) an injunction ordering Defendants "to produce and release for DNA testing the biological evidence" which was denied in state court.

---

[3]    At the time he filed the initial § 1983 complaint, Gonzales was scheduled to be executed a week later on March 8, 2022.  Two days after he filed the complaint, however, the TCCA stayed his execution to allow further review of unrelated claims (regarding intellectual disability and disclosure of *Brady* evidence) that were raised in a subsequent state habeas corpus application.  *Ex parte Gonzales*, No. 40,541-07, 2022 WL 628505 (Tex. Crim. App. Mar. 3, 2022).  That same day, the TCCA also affirmed the trial court's denial of DNA testing pursuant to Chapter 64.  *Gonzales*, 2022 WL 663806, at *1.  Because Gonzales sought rehearing of the TCCA's order, this Court stayed these proceedings to await the TCCA's ruling.  (Doc. 32).  Following the TCCA's resolution of the matter, the Court lifted the stay and reopened these proceedings.  (Doc. 51).

### III. Jurisdiction

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a federal court must dismiss a case for lack of subject-matter jurisdiction "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc., v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Gonzales has filed a § 1983 complaint challenging the constitutionality of the Texas DNA statute—Chapter 64—as authoritatively construed by the state court. The Supreme Court has found that such challenges may be brought in a § 1983 action. *See Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (holding "postconviction claim for DNA testing is properly pursued in a § 1983 action."). This is so because success in this civil-rights action, unlike a petition for habeas corpus relief, would not "necessarily imply" the invalidity of Gonzales's conviction. *Id.* at 534 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005)). In fact, DNA testing could potentially prove inconclusive or may even further incriminate Gonzales. Because Gonzales's complaint would not "necessarily spell speedier release," his suit is properly brought under § 1983. *Young v. Gutierrez*, 895 F.3d 829, 831 (5th Cir. 2018) (citing *Skinner*, 562 U.S. at 534).

Nevertheless, State and County Defendants request dismissal of Gonzales's amended complaint under Rule 12(b)(1), arguing that this Court lacks subject-matter jurisdiction over the complaint because (1) the Eleventh Amendment provides immunity, (2) Gonzales essentially seeks mandamus relief, and (3) the *Rooker-Feldman* doctrine bars review. As discussed below, none of these arguments establish that this Court lacks subject-matter jurisdiction.

### A. Eleventh Amendment Immunity

State Defendant first asserts that dismissal of Gonzales's complaint against him is warranted under the Eleventh Amendment. (Doc. 52). In most cases, Eleventh Amendment

sovereign immunity bars suit against state officials in their official capacities. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). This principle is subject to several exceptions, however, including the doctrine created in *Ex parte Young*, 209 U.S. 123 (1908).

The *Ex parte Young* doctrine allows suits for injunctive or declaratory relief against individual state officials, but only if those officials have "some connection with the enforcement of the challenged act." *La Union del Pueblo Entero v. Nelson*, 163 F.4th 239, 257 (5th Cir. 2025) (citation omitted). To help determine whether a state official enforces a challenged provision, the Fifth Circuit has identified the following guideposts:

> (1) the state official has "more than the general duty to see that the laws of the state are implemented," *i.e.*, a "particular duty to enforce the statute in question"; (2) the state official has "a demonstrated willingness to exercise that duty"; and (3) the state official, through her conduct, "compel[s] or constrain[s persons] to obey the challenged law."

*Id*. (citing *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024)). Because only *some connection* with enforcement is required for the *Ex parte Young* exception to apply, all that is needed is a "scintilla of 'enforcement' by the relevant state official with respect to the challenged law." *Id*. (citation omitted).

State Defendant argues that, as a mere custodian of DNA evidence in this case, he has no connection with the enforcement of Chapter 64. In particular, he contends that Chapter 64 exclusively designates the "attorney representing the state"—in this case, County Defendant—as the sole official responsible for providing or withholding DNA evidence for testing. (Doc. 52 at 4) (citing Tex. Code. Crim. Pro. art. 64.02). This argument drastically understates the State Defendant's role in the Chapter 64 scheme. In addition to a statutory duty to retain and preserve any biological evidence submitted, the State Defendant may be required under Chapter 64 to either conduct DNA testing or, if testing is done by a different laboratory, to receive the results

prepared by the outside laboratory within thirty days.[4]  *See* Tex. Code. Crim. Pro. art. 64.03(c)(1), (e).  State Defendant may also be required to compare any unidentified DNA profile with profiles in the DNA database that he maintains.  *See* Tex. Code. Crim. Pro. art. 64.035(2).

All of this indicates more than a "scintilla" of a connection with the enforcement of Chapter 64.  State Defendant has custody of evidence that Gonzales seeks to have tested under the DNA statute and could be required to act under the statute if the request was granted.  Because of his custodianship and role in the statute itself, the Eleventh Amendment is inapplicable.  *See Reed v. Goertz*, 598 U.S. 230, 234 (2023) (holding the *Ex parte Young* doctrine "allows suits like Reed's for declaratory or injunctive relief against state officers in their official capacities."); *Wood v. Patton*, No. A-24-CV-01058-RP, 2025 WL 629282, at *4 (W.D. Tex. Feb. 19, 2025) (same); *see also Gutierrez v. Saenz*, 606 U.S. 305 (2025) (recognizing standing to sue both the district attorney and the chief of police as custodians of DNA evidence).

## B.    Standing

Next, County Defendant argues that Gonzales has not established standing.  (Doc. 53 at 3-7).  If a party lacks Article III standing to pursue claims, a federal court lacks subject matter jurisdiction to adjudicate them.  *See Abraugh v. Altimus*, 26 F.4th 298, 304 (5th Cir. 2022).  To establish Article III standing, a plaintiff must prove that: (1) an "injury in fact" has occurred; (2) the injury can fairly be traced to the defendant's conduct; and (3) a favorable ruling will likely redress the injury.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

County Defendant argues that Gonzales cannot establish the third prong of standing—redressability—because this Court lacks jurisdiction to grant the relief he requests.  According to

---

[4]    In fact, State Defendant has already conducted DNA testing, albeit under a different statute, when police briefly reopened their investigation in 2000.  (Doc. 23 at 18-19); Tex. Code. Crim. Pro. art. 38.35(b).

County Defendant, the injunctive remedy Gonzales seeks is essentially a mandamus request which this Court has no power to issue. Indeed, it is well-established that federal courts lack the general power to issue writs of mandamus to direct state courts and their judicial officers in the performance of their duties where mandamus is the only relief sought. *Moye v. Clerk, Dekalb County Superior Court*, 474 F.2d 1275 (5th Cir. 1973). But here, mandamus is not the only relief sought by Gonzales—his Amended Complaint also clearly seeks a declaratory judgment finding that Chapter 64 is unconstitutional both on its face and as applied by Texas courts. (Doc. 23 at 3, 67).

More importantly, recent Supreme Court and Fifth Circuit precedent rejected Gonzales's redressability argument and found that similarly-situated plaintiffs have standing to challenge the constitutionality of Texas's DNA testing procedures. *See Gutierrez*, 606 U.S. at 321 (finding standing to pursue declaratory and injunctive relief against custodians of DNA evidence); *Reed*, 598 U.S. at 234 (finding Reed had standing to seek a favorable declaratory judgment); *Wood v. Patton*, 150 F.4th 377, 383 (5th Cir. 2025) (finding Article III standing to assert § 1983 claims that challenge "each of the roadblocks [Chapter] 64 placed between himself and DNA testing.") (citing *Gutierrez*, 606 U.S. at 317). As such, Gonzales has standing to pursue both declaratory and injunctive relief.

## C.    The *Rooker-Feldman* Doctrine

Lastly, County Defendant requests dismissal of Gonzales's complaint under what is known as the *Rooker-Feldman* doctrine.[5] (Doc. 53 at 4-5). The doctrine is a jurisdictional rule that precludes federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments. *Reed*, 598 U.S. at 235. But while Gonzales is barred from

---

[5]    The *Rooker-Feldman* doctrine derives from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

making a direct challenge in federal court to the state court's denial of DNA testing under Chapter 64, he may challenge the statute or rule governing the decision. *Id.* (citing *Skinner*, 562 U.S. at 532).

Here, Gonzales's complaint specifically challenges "the constitutionality of Chapter 64 both on its face and as applied by Texas courts." (Doc. 23 at 3). Because he is not challenging the adverse state-court decision itself but rather the validity of the Texas DNA statute it authoritatively construed, the *Rooker-Feldman* doctrine is inapplicable. *Reed*, 598 U.S. at 235 (finding *Rooker-Feldman* inapplicable to Reed's challenge to Chapter 64 because he does "not challenge the adverse" state-court decisions themselves, but rather "targets as unconstitutional the Texas statute they authoritatively construed.") (citing *Skinner* 562 U.S. at 532); *Wood*, 150 F.4th at 383 n.8 (same).

County Defendant tries to distinguish this case from *Reed* and *Wood*, arguing that Gonzales runs afoul of *Rooker-Feldman* by "demanding that this Court give him exactly what the [TCCA] considered and denied." (Doc. 53 at 5). But as "the master of [his] complaint," Gonzales "gets to determine which substantive claims to bring." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (citation omitted). Gonzales's Amended Complaint effectively parrots *Reed* and *Skinner* by arguing that Chapter 64, both on its face and as authoritatively construed by the TCCA, violates the Constitution. (Doc. 23 at 3, 56, 60). And in his response to the motion to dismiss, Gonzales states that he "does not seek a different result under Texas law; in fact, his suit assumes that the [TCCA] correctly and authoritatively rendered its decision construing Texas law." (Doc. 58 at 16). *Rooker–Feldman* is thus clearly inapplicable. *See Reed*, 598 U.S. at 235; *Wood*, 150 F.4th at 383 n.8. Consequently, this Court does not lack subject-matter jurisdiction.

10

# IV. <u>Standard of Review</u>

County and City Defendants also request dismissal of Gonzales's amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Gonzales fails to state a claim upon which relief may be granted.[6]  Fed. R. Civ. P. 12(b)(6).  Under this standard, the amended complaint must be liberally construed in favor of the plaintiff and all facts pleaded in the complaint must be taken as true.  *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).  A reviewing court must therefore consider whether, "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Id.*

Although a complaint does not need detailed factual allegations, a plaintiff must allege sufficient facts to show more than a speculative right to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To withstand dismissal, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Iqbal*, 556 U.S. at 678-79.  This plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully."  *Id*.  Thus, a district court's dismissal of a complaint for failing to state a claim will be upheld if, "taking the plaintiff's allegations as true, it appears that no relief could be granted based on the plaintiff's alleged facts."  *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009).

---

[6]    Interestingly, State Defendant did not seek dismissal under Rule 12(b)(6), instead relying solely the jurisdictional argument regarding Eleventh Amendment sovereign immunity discussed previously.  (Doc. 52).  Regardless, this Court has the inherent discretion to dismiss a case at any time if it determines that a complaint is frivolous, malicious, or fails to state a claim on which relief may be granted.  28 U.S.C. § 1915A(b)(1).  Given this discretion, the Court will analyze Gonzales's claims pursuant to both § 1915A(b)(1) and Rule 12(b)(6).

## V.  Analysis

### A.    Due Process

Defendants move to dismiss Gonzales's amended § 1983 complaint for failing to state a claim upon which relief may be granted.  To state a claim under § 1983, a plaintiff must prove that: (1) the conduct in question was committed by a person acting under the color of state law, and (2) the conduct deprived the claimant of a constitutional right.  *Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010).  While there is no freestanding constitutional right for a convicted defendant to obtain evidence for post-conviction DNA testing, Texas has created such a right.  *See* Tex. Code. Crim. Pro. art. 64.03.  As a result, the state-provided procedures must be adequate to protect the substantive rights provided.  *Skinner*, 562 U.S. at 525; *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 69 (2009).

In order for these procedures to be unconstitutional, it would have to be determined that the procedures were "fundamentally inadequate" to protect Gonzales's right to seek post-conviction DNA testing, offending "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Osborne*, 557 U.S. at 69.  This is a difficult standard to meet, and leaves "slim room for [Gonzales] to show that the governing state law denies him procedural due process."  *Milam v. Jimerson*, 152 F.4th 678, 682 (5th Cir. 2025) (citing *Skinner*, 562 U.S. at 525).  As discussed below, Gonzales does not meet this demanding standard.

### 1.    High Burden of Proof

Gonzales first argues that Chapter 64 places a "particularly high standard of proof" on movants to show they are entitled to DNA testing.  (Doc. 23 at 56).  In particular, Gonzales challenges Chapter 64's requirement that applicants establish, by a preponderance of evidence,

that they would not have been convicted if exculpatory results had been obtained through DNA testing.  *See* Tex. Code Crim. Proc. art. 64.03(a)(2)(A).  According to Gonzales, this requirement creates a higher burden than what is required in the majority of states that allow similar testing while simultaneously preventing Texas applicants from using post-trial factual developments to satisfy the standard.

The Fifth Circuit recently rejected a similar argument in *Reed v. Goertz*, 136 F.4th 535, 545 (5th Cir. 2025).  There, Reed challenged Chapter 64's chain-of-custody requirement, arguing that it unfairly placed the burden on the applicant even though the State was responsible for the condition of the evidence.  The court reasoned that, because applicants seeking DNA testing under Chapter 64 have already been found guilty at a fair trial, "the presumption of innocence disappears . . . and the state is then justified in placing certain burdens on the convicted individual."  *Id.* (citations omitted).  The court then noted that, under this framework, "the Supreme Court approved of Alaska's postconviction-DNA-testing scheme, which places a clear-and-convincing burden on the person seeking testing."  *Id.* (citing *Osborne*, 557 U.S. at 68-69).

This Court sees no constitutionally relevant distinction between the argument rejected in *Reed*—challenging the chain-of-custody burden placed on the applicant—and Gonzales's argument that the preponderance-of-the-evidence standard of Art. 64.03(a)(2)(A) is too high.  And any minor differences in the two cases "do not convincingly fit . . . into the 'slim' space provided for actions challenging state post-conviction DNA testing schemes."  *Id.* at 544 (citing *Skinner*, 562 U.S. at 525).  As *Reed* pointed out, the Supreme Court has already approved a similar legal framework for obtaining post-conviction DNA testing that placed a much higher burden (clear and convincing) on the applicant than Chapter 64.  *Id.* (citing *Osborne*, 557 U.S. at 68-69).  Perhaps for that reason, Gonzales effectively concedes that "aspects of his claim that

concern Art. 64.03(a)(2)(A)'s high standard for obtaining testing and exclusion of post-trial factual developments are now controlled by *Reed*." (Doc. 58 at 37). Thus, no relief is available on Gonzales's first argument.

### 2. The "Resentencing Rule"

Gonzales next contends that the TCCA, in upholding the denial of DNA testing, unfairly considered supplemental post-trial evidence presented by the State during his resentencing trial in 2009 while refusing to consider the post-trial factual developments he presented. (Doc. 60-61). Gonzales's argument centers on the fact that the TCCA relied, in part, on testimony from Gonzales's wife during his second punishment trial while simultaneously noting that they "do not consider post-trial factual developments" when evaluating Art. 64.03(a)(2)(A)'s exoneration requirement. *See Gonzales*, 2022 WL 663806, at *10, n.10. According to Gonzales, this new "resentencing rule" flouts fundamental fairness by creating a lack of parity—the State is allowed to augment evidence of guilt after trial, but the applicant is unable to use post-trial evidence to help establish his innocence.

Gonzales misconstrues the TCCA's opinion. The court clarified that "post-trial factual developments" typically refers to evidence or information gleaned during post-trial habeas proceedings, while evidence obtained during a punishment retrial is considered part of an applicant's trial. *Id*. The court considered the resentencing testimony because it was considered part of Gonzales's trial proceedings, without which Gonzales "would not have a valid conviction and sentence" to challenge. *Id*. In contrast, Gonzales offered "newly discovered" evidence that "has not been subjected to adversarial testing or otherwise reviewed for reliability by any court[.]" *Id*. at n.9. Thus, contrary to Gonzales's suggestion, the TCCA did not hold him to a different standard than the State.

Gonzales has not provided this Court with any authority establishing that, when conducting the exoneration inquiry, a court should not consider evidence presented during a resentencing hearing because it was not considered by the original jury who convicted the defendant. (Doc. 58 at 32). Similarly, he has presented no authority establishing a right to present post-trial factual developments. In fact, *Reed* held just the opposite. *Reed*, 136 F.4th at 547 (rejecting Reed's suggestion that a fundamental right exists to present post-trial factual developments for consideration during the exoneration inquiry). Accordingly, Gonzales's second due process allegation fails to state a valid claim for relief.

      3.    <u>The "Hypothetical-Parties Rule"</u>

Gonzales's third argument meets a similar fate. In it, he argues that the TCCA held for the first time that DNA testing may be denied based on "alternate theories of guilt" that were never presented to jurors as a basis for conviction. (Doc. 23 at 61-62). This argument stems from the TCCA's holding that, even if the requested DNA material showed the presence of another person or persons at the crime scene, it would not exonerate Gonzales as either a principal or a party. *Gonzales*, 2022 WL 663806, at *10 (finding presence of third party's DNA profile "would not exculpate [Gonzales]"). Based on what he terms the "hypothetical party instruction rule," Gonzales contends that a defendant must now show not only that he would not have been convicted of murder, but also that he would not have been convicted of murder under the theory of accomplice liability, regardless of whether the jury was instructed on such a theory.

Gonzales again misconstrues the TCCA's holding. Gonzales faults the TCCA for downplaying evidence that could potentially show that other parties were involved in the double murder, arguing that such evidence would undermine his conviction because he was only tried as a principal to the murders and not as an accomplice. But while Gonzales was tried as the

principal in this case, the State conceded at trial that "others could be involved in the offense." *Id*. And under Texas law, there is no distinction between an accomplice to a murder and the principal of the murder. *See* Tex. Code Crim. Proc. art. 7.01(c) ("All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.").

For this reason, the TCCA was correct that Gonzales could not meet the exoneration requirement of Chapter 64 even if DNA evidence could potentially demonstrate that other parties were involved in the offense, as such evidence would only "muddy the waters" rather than demonstrate that Gonzales would not have been convicted. *Gonzales*, 2022 WL 663806, at *10. This is in line with the Fifth Circuit's recent opinion in *Reed*, which rejected the argument that due process "requires the state to test evidence on the mere allegation that someone else's DNA might also be identified." *See Reed*, 136 F.4th at 547 (reiterating that the exoneration requirement exists to ensure that "DNA tests will prove a convicted person's innocence" and not "merely muddy the waters.") (citation omitted). Gonzales therefore fails to establish a valid due process violation.

### 4.    The Exoneration Requirement

In a related claim, Gonzales alleges that the TCCA violated his due process rights by equating the "identity" requirement of Art. 64.03(a)(1)(C) with the "exoneration" requirement set forth in Art. 64.03(a)(2)(A). (Doc. 23 at 62). In other words, Gonzales believes a due process violation resulted from the application of the same standard to two different provisions of Chapter 64. As discussed in the previous sections, however, the Fifth Circuit has upheld the constitutionality of Art. 64.03(a)(2)(A)'s exoneration requirement against similar due process challenges. *See Reed*, 136 F.4th at 547 (concluding that Art. 64.03(a)(2)(A) was neither arbitrary

nor fundamentally unfair). Thus, while applying the same standard may be redundant, it does not run afoul of due process requirements.

### 5. Newer Technology

Finally, Gonzales briefly contends that the TCCA's ruling arbitrarily limited his access to newer DNA technology that may generate more accurate and probative results than when certain evidence was first tested in 2000. (Doc. 23 at 62-63). Without providing any support, Gonzales contends that the denial of access to testing using "new scientific techniques" violated his due process rights. Gonzales's allegation is misleading. He was not denied access to newer technology—he was denied access to DNA testing because he failed to establish the requirements set forth in Art. 64.03 that have been upheld as constitutional. *Reed*, 136 F.4th at 549. Relief is therefore unavailable.

### 6. Summary

The Court again notes that the threshold set by *Osborne* is a difficult standard to meet, leaving "slim room for [Gonzales] to show that the governing state law denies him procedural due process." *Milam*, 152 F.4th at 682; *see also Cromartie v. Shealy*, 941 F.3d 1244, 1252 (11th Cir. 2019) (finding "[e]very court of appeals to have applied the *Osborne* test to a state's procedure for postconviction DNA testing has upheld the constitutionality of it.").[7] Gonzales failed to meet the heavy burden of showing that the procedures established by Chapter 64, as construed by the TCCA, are inadequate to protect a defendant's right to post-conviction DNA testing.

---

[7]    *See*, *e.g.*, *Cromartie*, 941 F.3d at 1256 (upholding Georgia's postconviction DNA testing scheme); *Morrison v. Peterson*, 809 F.3d 1059, 1067-69 (9th Cir. 2015) (holding California's procedure constitutional); *Alvarez v. Att'y Gen*., 679 F.3d 1257, 1266, n.2 (11th Cir. 2012) (Florida); *McKithen v. Brown*, 626 F.3d 143, 152 (2d Cir. 2010) (New York); *Tevlin v. Spencer*, 621 F.3d 59, 71 (1st Cir. 2010) (Massachusetts); *Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1261 (11th Cir. 2010) (Alabama).

Thus, after careful consideration, the Court is unable to find any failure of Texas's post-conviction procedures that "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental" or that "transgress[es] any recognized principle of fundamental fairness in operation." *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018) (citing *Osborne*, 557 U.S. at 69). There is simply "nothing inadequate about the procedures [Texas] has provided to vindicate its state right to postconviction relief in general," much less anything "inadequate about how those procedures apply to those who seek access to DNA evidence." *Osborne*, 557 U.S at 70. For these reasons, Gonzales fails to establish a due process violation.

**B.    <u>Access to Courts</u>**

Gonzales next contends that the TCCA's interpretation of Chapter 64 prevented him from gaining access to potentially exculpatory information that could demonstrate his innocence. According to Gonzales, this failure interfered with his First and Fourteenth Amendment rights of access to the courts, as it prevented him from collecting evidence to support either a successive habeas corpus petition or an application for clemency. This claim fails as well.

It is well established that prisoners have a constitutional right of access to the courts that is "adequate, effective, and meaningful." *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)). That being said, "[o]ne is not entitled to access to the courts merely to argue that there might be some remote possibility of some constitutional violation." *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017) (quoting *Whitaker v. Livingston*, 732 F.3d 465, 467 (5th Cir. 2013)). Rather, a plaintiff must show an actual injury and an actual legal claim to establish a valid access-to-courts claim. *Lewis v. Casey*, 518 U.S. 343, 350-52 (1996); *see also Turner v. Epps*, 460 F. App'x 322, 328 (5th Cir.

2012) (unpublished) (explaining that "an inmate who brings a § 1983 claim based upon his right of access to the courts must be able to show that the infringing act somehow defeated his ability to pursue a legal claim.").

Gonzales has not pointed to any actual claim that he was prevented from lodging in a court of law. Although he sought DNA testing to support a potential actual-innocence claim, Gonzales's request was evaluated by the trial court pursuant to the statutory process set forth in Chapter 64. He also took advantage of the right to appeal the trial court's decision to the TCCA, and has filed numerous post-conviction pleadings, including a subsequent state habeas application. Considering Gonzales fully utilized the processes enacted by the state legislature, he fails to establish an "actual injury" to support a claim that his right of access to the courts was obstructed.

Furthermore, while Gonzales argues the denial of his DNA motion impeded access to evidence he needed in order to pursue either clemency or state habeas relief, the right of access to the courts does not encompass the ability "to *discover* grievances, and to *litigate effectively* once in court." *Lewis*, 518 U.S. at 354 (emphasis in original). Gonzales points to no actual claim that he was prevented from lodging in a court of law—in fact, he candidly admits he "attempted to demonstrate his innocence using all *other* available evidence" in his recent subsequent state habeas application. (Doc. 23 at 65) (emphasis in original). As such, Gonzales's claim that the denial of DNA testing also denied him access to the courts does not state a valid claim for relief. *See Alvarez v. Attorney General for Fla.*, 679 F.3d 1257, 1265-66 (11th Cir. 2012) (finding access to courts was not violated by denial of post-conviction DNA testing).

C.    **The Eighth Amendment**

In his third claim for relief, Gonzales argues that Chapter 64 violates the Eighth Amendment's prohibition on cruel-and-unusual punishment because it deprived him, a prisoner "wrongfully convicted of capital murder and sentenced to death," of access to DNA testing that could potentially demonstrate his innocence. (Doc. 23 at 65).

Gonzales provides no argument to support this assertion, nor is the Court aware of any precedent indicating the denial of DNA testing constitutes an Eighth Amendment violation. Essentially, Gonzales seeks to constitutionalize a right to DNA testing under the Eighth Amendment whenever a prisoner has "viable claims of innocence," a notion the Supreme Court has unambiguously rejected. *Osborne*, 557 U.S. at 72 (rejecting invitation to recognize "a freestanding right to DNA evidence" and concluding there is no substantive due-process post-conviction right to obtain evidence for DNA testing purposes).

Moreover, challenges to DNA statutes such as Chapter 64 are allowed to proceed under § 1983 because they do not challenge the guilt or innocence of the defendant. *Id*. at 69-70; *Skinner*, 562 U.S. at 532. Here, Gonzales's purported innocence is an essential element of his Eighth Amendment challenge. Because Gonzales's allegation necessarily implies the invalidity of his conviction and sentence, a remedy is not available under § 1983. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994) (finding § 1983 relief unavailable for claims that necessarily imply the invalidity of the plaintiff's conviction or sentence). Gonzales therefore fails to state a viable Eighth Amendment claim.

D.    **Equal Protection**

In his final claim, Gonzales briefly contends that Chapter 64, as construed by the TCCA, violates his right to equal protection under the Fourteenth Amendment. (Doc. 23 at 66). Similar

to his previous allegations, this claim fails to state a claim upon which relief may be granted.

The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *Wood v. Collier*, 836 F.3d 534, 538-39 (5th Cir. 2016) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). When an equal protection claim implicates a suspect class or a fundamental right, strict scrutiny is the appropriate standard of review. *Id.* at 539 (citation omitted). But for claims that assert a difference in government treatment between categories of people that do not implicate a suspect class or a fundamental right, the appropriate standard of review is "whether the difference in treatment between [classes] rationally furthers a legitimate state interest." *Id.* (citation omitted).

Gonzales wisely does not assert that strict scrutiny should apply in this case, as his claim neither identifies a suspect class nor involves a fundamental right. *Osborne*, 557 U.S. at 69 (stating there is no fundamental right to post-conviction DNA testing); *Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998) ("A classification that categorizes inmates based on the type of criminal offenses for which they have been convicted does not implicate a suspect class."). Instead, he argues that he belongs to a class of individuals who are unfairly precluded from accessing DNA testing under Chapter 64:

> [P]ersons who (1) must rely on newly discovered evidence other than DNA evidence to demonstrate that no reasonable juror would have convicted them, and (2) are convicted of crimes in which one or more individuals could have been present at the scene of the crime.

(Doc. 23 at 66). Gonzales contrasts this "class" with those who are eligible for testing under the statute—i.e., persons "who can show that no reasonable juror would have convicted them based exclusively on hypothetical exculpatory DNA test results and evidence of innocence that was presented at trial." *Id.*

As noted by County Defendant, the most prominent problem with Gonzales's allegation is that his "classes" are nothing more than those who can and cannot meet the burden of proof set forth in Chapter 64. (Doc. 53 at 11). Specifically, Gonzales is claiming differential treatment between persons who meet the exoneration and identity requirements of Chapter 64 and those who do not. But this distinction is neither irrational nor arbitrary. Quite the contrary, the exoneration and identity requirements of Chapter 64 exist to ensure that DNA testing "will prove a convicted person's innocence" and not simply "muddy the waters." *Reed*, 136 F.4th at 547 (concluding the exculpatory-results requirement was neither arbitrary nor unfair); *see also Widmer v. Okereke*, No. 24-3054, 2025 WL 1432584, at *16 (6th Cir. 2025) (unpublished) (finding "postconviction procedures aimed at exclusionary DNA testing vindicate legitimate state interests in judicial efficiency.").

Under the rational basis standard of review, differential treatment must be upheld against an equal protection challenge "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Wood*, 836 F.3d at 539. In the context of DNA testing, the government's legitimate interest in judicial efficiency provides such a basis. Consequently, Gonzales's equal-protection allegation does not state a valid claim for relief.

## VI.  Conclusion and Order

Contrary to arguments made by Defendants, neither the nature of Gonzales's request, the *Rooker-Feldman* doctrine, nor the Eleventh Amendment divest this Court of subject-matter jurisdiction over Gonzales's amended complaint. However, Gonzales's complaint fails to state a claim upon which relief may be granted because there is nothing inadequate about how Chapter 64's procedures apply to those who seek access to DNA evidence. *See* 28 U.S.C. § 1915A(b)(1); Fed. R. Civ. P. 12(b)(6).

Accordingly, based on the foregoing reasons, **IT IS HEREBY ORDERED** that:

1.    State Defendant's Motion to Dismiss, filed June 13, 2025 (Doc. 52), is **GRANTED**;

2.    County Defendant's Motion to Dismiss, filed June 20, 2025 (Doc. 53), is **GRANTED**;

3.    City Defendant's Motion to Dismiss, filed June 23, 2025 (Doc. 54), is **GRANTED**; and

4.    Gonzales's Amended Complaint seeking declaratory and injunctive relief, filed May 13, 2022 (Doc. 23), is **DISMISSED WITH PREJUDICE** for failing to state a claim upon which relief may be granted.

It is so **ORDERED**.

SIGNED this 3rd day of February, 2026.

_____
DAVID COUNTS
UNITED STATES DISTRICT JUDGE